**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SKYPORT GLOBAL | § | CASE NO. 08-36737-H4-11 |
| COMMUNICATIONS, INC., | § | (Chapter 11) |
| Debtor | § | |

| | | |
|---|---|---|
| Joanne Schermerhorn, John K. Waymire, Chet Gutowsky, | § | |
| John Llewellyn, Joseph A. Lopez, Robert Foote, BLF | § | |
| Partners, Ltd., ECAL Partners, Ltd, Whiz Kid Ventures, | § | |
| LLC, Bella Krieger, Martin Pollak, Gloster Holdings, | § | |
| LLC, Melvyn Reiser, Barry Klein, Yecheskel Kahan, John | § | |
| A. Rees, Brian W. Harle, MD, Michael Stein, Lawrence | § | |
| Solomon, Tracy Elstein & David Togut, Jason Charles | § | |
| Togut Trust, BMT Grantor Trust, Lynn Joyce Elstein | § | |
| Trust, Charles Stack, Joseph Baker, Movada, Ltd., Puddy, | § | |
| Ltd., Draco Capital, Inc., Edward Pascal, Robert Mendel, | § | |
| Stanley Beraznik, Don Dui, Ben Ariano, 3790168 Canada, | § | |
| Inc., Peter Taylor, John E. Panneton, Wayne C. Fox, | § | |
| David Currie, Byron Messier, Darshan Khurana, Mateo | § | |
| Novelli, Diya Al-Sarraj, Sequoia Aggressive Growth | § | |
| Fund, Ltd., Sequoia Diversified Growth Fund, Ltd., | § | |
| Rig III Fund, Ltd., Aran Asset Management SA, Semper | § | |
| Gestion SA, and Eosphoros Asset Management, Inc., | § | |
| Plaintiffs | § | |
| | § | |
| Vs. | § | ADVERSARY NO. 10-_____ |
| | § | |
| CenturyTel, Inc. (a/k/a CenturyLink), Clarence | § | |
| Marshall, R. Stewart Ewing, Jr., Michael E. Maslowski, | § | |
| Harvey P. Perry, Robert Kubbernus, Balaton Group, Inc., | § | |
| Bankton Financial Corporation, Bankton Financial | § | |
| Corporation, LLC, ClearSky Management, Inc., | § | |
| Wilson Vukelich, LLP, and ClearSky Investments, LP, | § | |
| Defendants | § | |

## NOTICE OF REMOVAL

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

Defendants, CenturyTel, Inc. (a/k/a CenturyLink), Clarence Marshall, R. Stewart Ewing, Jr.,

Michael E. Maslowski, Harvey P. Perry, (collectively, the "CenturyTel Defendants") and Robert

Kubbernus, Balaton Group, Inc., Bankton Financial Corporation, Bankton Financial Corporation, Llc,

ClearSky Management, Inc., and ClearSky Investments, LP (collectively, the "Kubbernus

Defendants," together with the CenturyTel Defendants, "Defendants") file this Notice of Removal pursuant to 28 U.S.C. § 1452, Federal Rule Bankruptcy Procedure 9027, and Bankruptcy Local Rule 9027(b)(1), and provide notice of removal of all claims of Plaintiffs asserted against Defendants in Cause No. 2010-09675, *Joanne Schermerhorn, John K. Waymire, Chet Gutowsky, John Llewellyn, Joseph A. Lopez, Robert Foote, BLF Partners, Ltd., ECAL Partners, Ltd., Whizkid Venture, LLC, Bella Krieger, Martin Pollak, Gloster Holdings, LLC, Melvyn Reiser, Barry Klein, Cheskel Kahan, John A. Reese, Brian W. Harle, Michael Stein, Lawrence Solomon, Tracy Elstein & David Togut, Jason Charles Togut Trust, BMT Grantor Trust, Lynn Joyce Elstein Trust, Charles Stack, Joseph Baker, Movada, Ltd., Puddy, Ltd., Draco Capital, Inc., Edward Pascal, Robert Mendel, Stanley Beraznik, Don Dui, Ben Ariano, 3790168 Canada, Inc., Peter Taylor, John E. Panneton, Wayne C. Fox, David Currie, Byron Messier, Darshan Khurana, Mateo Novelli, Diya Al-Sarraj, Sequoia Aggressive Growth Fund, Ltd., Sequoia Diversified Growth Fund, Ltd., Rig III Fund, Ltd., Aran Asset Management SA, Semper Gestion SA, and Eosphoros Asset Management, Inc. v. CenturyTel, Inc. (a/k/a CenturyLink), Clarence Marshall, R. Stewart Ewing, Jr., Michael E. Maslowski, Harvey P. Perry, Robert Kubbernus, Balaton Group, Inc., Bankton Financial Corporation, Bankton Financial Corporation, LLC, Clearsky Management, Inc., Wilson Vukelich, LLP, and Clearsky Investments, LP*, currently pending in the 113th Judicial District Court, Harris County, Texas (the "State Court Lawsuit") to the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  In support of this Notice of Removal, the Defendants respectfully show the following:

## Motion To Dismiss Incorporated by Reference

1.     Filed contemporaneously herewith is Defendants' *Motion to Dismiss, Or, Alternative, for Summary Judgment, and for Sanctions* seeking sanctions for violation of this Court's discharge injunction.  Plaintiffs have sued former insiders of the Debtor, SkyPort Global

Communications, Inc. ("Debtor" or "SkyPort"), based on claims which this Court released and enjoined by a Confirmation Order [docket #340[1]], or claims for which Plaintiffs lack standing to pursue as former shareholders whose shares were cancelled by this Court.  Notwithstanding this Court's orders, Plaintiffs seek control over the Debtor on account of their pre-bankruptcy equity interests and alleged improper cancellation of those interests in the Debtor's Plan.

## SUMMARY OF DISPUTE

*Confirmation Order is Being Collaterally Attacked by Parties Who Had Notice.*

1.      This Court entered a Confirmation Order, after notice to all affected parties (including Plaintiffs),[2] that (a) merged SkyComm Technologies Corporation ("SkyComm") into the Debtor (its wholly owned subsidiary) and cancelled the Debtor's shares,[3] and (b) released all insiders from liability and derivative claims.[4]

2.      One year later, Plaintiffs (former shareholders who had notice of the bankruptcy) sued SkyPort's insiders in a 111-page derivative petition (the "Petition").  Draco Capital ("Draco"), one of the named Plaintiffs, had even objected to confirmation because its claims would be released and it disagreed with the merger.  The Court held a trial.  Draco lost.  The Court eventually confirmed the Plan with the carve-out of Draco's non-derivative claim against

---

[1]     All references in this notice to "docket #" refer to docket numbers in the main bankruptcy case (No. 08-36737).

[2]     Some Plaintiffs claim they received no notice, but docket #43 (filed in November 2008) is the Debtor's notice of equity interest holders listing most, if not all, of the Plaintiffs.  Thus, the clerk and Debtor repeatedly served these parties during the case.  Plaintiffs had notice.  The Petition at ¶262 admits notice of the bankruptcy by most Plaintiffs "The existence and identity of [recent stockholders] did not become known to SkyComm's Original Shareholders until late 2008 when Balaton [sic] listed them as shareholders in a second SkyPort Bankruptcy filing…."

[3]     Plan at 6.3, Final Disclosure Statement [docket #264] at p. 21: "Because the Holders of Interests (after Merger with SkyComm) receive nothing on account of its interests, they are deemed to reject the plan and not entitled to vote."; Confirmation Order [docket #340] at p. 10: "Specifically, the merger of SkyComm into Skyport is approved such that Skyport will be the surviving entity."

[4]     Plan at 13.7 and 13.8.

ClearSky[5] from the releases.[6]  All other derivative claims were released, the merger occurred, and the Debtor's shares were cancelled.

3.    Plaintiffs' suit, on its face, seeks to place SkyPort under the control of its former shareholders and reverse the Confirmation Order.  Plaintiffs claim that this Court's order was "based on false testimony" and "fraudulently using the plan".[7]  The Confirmation Order effected the SkyComm/SkyPort merger, cancelled the equity interests, and stated that equity interests "shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all . . . such Interests".[8]  Plaintiffs, however, repeatedly seek "*an order appointing a provisional director, trustee, managing agent, fiscal agent or other court appointed fiduciary for SkyComm and SkyPort*".[9]  That relief directly violates the Confirmation Order's cancellation of the Equity Interests.  The direct challenge to this Court's Confirmation Order puts this dispute squarely within this Court's jurisdiction.

*Plaintiffs Are Violating the Confirmation Order Injunction.*

4.    The bulk of the 111-page Petition[10] alleges injuries to SkyPort, bad management of SkyPort and decreased value of SkyPort shares.[11]  The standard for determining whether a cause of action is a direct claim or derivative claim focuses on the following: who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive

---

[5]    Collectively, ClearSky Management, Inc. and ClearSky Investments, LP.

[6]    With Draco's written agreement, the Plan was modified to exclude Draco's direct claim against a non-debtor, ClearSky, for return of monies invested with that entity.  That direct claim is not a subject of this motion.  That claim was a direct claim buried in 111 pages of derivative claims.

[7]    Complaint at pp. 60-63.

[8]    Plan at 13.2.

[9]    Petition at pp. 72 and 81.

[10]    Again, all claims are derivative and/or released except the direct claim by Draco against ClearSky for return of money invested with ClearSky, which was expressly not released.

[11]    As SkyComm was merged into SkyPort with the resulting entity being SkyPort, there is no "SkyComm" to seek relief against, only the reorganized Debtor, SkyPort.

the benefit of the recovery or other remedy (*i.e.*, the "*Tooley Standard*" as enunciated in *Tooley v. Donaldson, Lufkin, & Jenrette, Inc., et al.*, 845 A.2d 1031 (Del. 2004) and applied by the Southern District of Texas in *In re Dexterity Surgical, Inc*., 365 B.R. at 695-702).

5.      Plaintiffs allege injuries based on harm to the merged Debtor.[12]  The gravamen appears to be an alleged misuse of corporate money and director's power.  Per Plaintiffs' own colorful language in the Petition, it was the company (and derivative share values) that were injured.  The company was "looted,"[13] and "mismanaged,"[14] and the shareholders suffered derivative injury through "loss by Plaintiffs of the entire value of their interests,"[15] or they were "diluted,"[16] accord *In re Dexterity Surgical, Inc.*, 365 B.R. at 697-98 ("The Court notes that there is a recurring theme in Plaintiffs' allegations … Dexterity suffered injury.").

6.      Under the Confirmation Order, derivative claims were explicitly released by the merged Debtor and SkyComm's equity interests were cancelled.  To the extent the claims were not released, they re-vested in the reorganized SkyPort.  Plaintiffs (or most of them) were aware of the bankruptcy, had the opportunity to file an objection to the merger or release of claims, and failed to object.  The one Plaintiff who did object, Draco, eventually consented to the merger and releases (as modified to exclude the ClearSky claims).

7.      Plaintiffs' Petition violates the letter of the Plan, which cancelled all interests in SkyComm, merged the entities and discharged claims:

---

[12]   Plaintiffs apparently use "SkyComm" and "Skyport" nearly interchangeably in an effort to confound the two. After confirmation of the Plan, there was no "SkyComm," as that entity had been merged with SkyPort and Skyport's shares were cancelled.  Thus, all discussion of "SkyComm" involves SkyPort.  Likewise, SkyComm's only duty was to hold SkyPort's stock, so the allegations of mismanagement are necessarily complaints about management of SkyPort.

[13]   Petition at ¶5, ¶347(k).

[14]   Petition at ¶129.

[15]   Petition at ¶7.

[16]   Petition at ¶232, ¶237, ¶278.

> 6.3     Merger.  The Debtor is a wholly owned subsidiary of SkyComm. The only asset of SkyComm is the Debtor and the only liability of SkyComm is to CenturyTel.   SkyComm is a Delaware corporation. Pursuant to Delaware law, SkyComm (the parent company) will merge into the Debtor (the wholly owned subsidiary).   The merger will be accomplished by the vote of Balaton as shareholder of SkyComm.   **Once merged, the Debtor's equity interests (formerly SkyComm's equity holders) will be cancelled and shares of the Reorganized Debtor re-issued in exchange for the Claims of Balaton.**

Plan at 6.3 (emphasis added).

> **All Holders of Claims shall be prohibited from asserting against the Debtor, Reorganized Debtor, Balaton or Insider Released Parties (defined infra) or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a proof of Claim. . . .**

Plan at 13.5 (emphasis in original).

8.     Now, the holders of cancelled equity interests holding (at best) discharged claims (i.e., Plaintiffs) have sought to obtain control of the Debtor.  Under the Confirmation Order, holders of these claims are enjoined.  Moreover, Plaintiffs were aware of the discharge and failed to object. *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1051 (5th Cir. 1987) (failure of a party to object to a release in a plan, even if an illegal release, constitutes *res judicata*).

### JURISDICTION AND VENUE

9.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The Court retains post-confirmation jurisdiction to enforce the bankruptcy discharge.  The Confirmation Order [docket #340] retained the jurisdiction of this Court for disputes exactly like the present one:

> This Court retains jurisdiction (i) to enforce and implement the terms and provisions of the Plan and this Order, all amendments thereto, any waivers and consents herein provided, and any agreements executed in connection herewith, (ii) to resolve any disputes arising under or related to this Order

or the Plan, and (iii) to interpret, implement and enforce the provisions of this Order.

Confirmation Order at p. 11.

10.     Likewise, the Plan confirmed that this Court retains jurisdiction to enforce the releases contained therein:

> 12.1    Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:
>
> * * *
>
> 12.1.3 To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtor and any other entity having rights under the Plan as may be necessary to implement the Plan;
>
> * * *
>
> 12.1.11 To enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require persons holding Claims being released to release Claims in compliance with the Plan;

Plan at pp. 19-20.

11.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B), (C), (L) or (O). Venue of the Debtor's Chapter 11 case is proper in this District pursuant to 28 U.S.C. §§ 1408(1) and (2).  This adversary proceeding arises under a case under Title XI.  Alternatively, it is related to a case under Title XI.

### CHAPTER 11 BANKRUPTCY

12.     In late October 2008, a major satellite provider (Intelsat) threatened to immediately terminate SkyPort's service.  SkyPort filed bankruptcy on October 24, 2008.

13.     On the bankruptcy date, SkyPort had two principal secured creditors: (a) Aegis Texas Venture Fund ("Aegis"), which was owed $2.5 Million, and (b) CenturyTel, Inc.

("CenturyTel"), which was owed $2.7 Million.  Initially, there was a dispute between Aegis and CenturyTel over the validity and priority of their respective liens.

14.     In November 2008, SkyPort's management team was released and the largest shareholder, Balaton Group, Inc. ("Balaton"),[17] took over management of SkyPort.  Robert Kubbernus, Balaton's CEO, took the position of CEO for SkyPort and immediately put in place a number of key strategies and individuals to turn the company around.  Operations were consolidated and the company began concentrating on positive cash flow.  Mr. Kubbernus, formerly a resident of Toronto, moved to Texas to be closer to the SkyPort facilities and operations.

15.     Likewise, the Debtor lacked money to operate.  No other lender was available and so Balaton became the Debtor-in-Possession Lender (DIP Lender).  The DIP loan was approved by this Court's order [docket #32, amended by docket #99].  Balaton was, according to the Court's final order, acting in good faith.

16.     On May 22, 2009, the Debtor proposed its Chapter 11 Plan of Reorganization [docket #223] (the "Plan").

17.     On July 9, 2009, the First Amended Disclosure Statement was approved ("Final Disclosure Statement").

18.     On July 10, 2009, the Final Disclosure Statement, Plan, and Ballots were mailed to all creditors and stockholders in SkyComm,[18] who had until August 4, 2009, to vote to accept or reject the Plan.

---

[17]    Balaton was a 58% shareholder of SkyComm, which owned 100% of SkyPort.

[18]    Docket #270.

## Notice Was Given to the Equity Interest Holders of SkyComm

*Listed from Inception as Debtor's "Equity Interest Holders" [Docket #43].*

19.     On November 20, 2008, the Debtor filed its list of equity security holders [docket #43]—placing all known shareholders of SkyComm (the 100% owner of SkyPort) on the list and notifying those shareholders of the bankruptcy from inception.  A copy of docket #43 is attached as ***Exhibit A***.  Plaintiffs (virtually all of them) are on that list.

20.     As mentioned above, the Clerk sent notice of the Plan and Disclosure Statement to the equity interest holders in SkyComm.[19]  The Certificate of Notice was filed [docket #270].  Likewise, the Debtor also served the SkyComm interest holders before the Plan was confirmed [docket #268].

*Disclosure Statements—"Interests (after Merger with SkyComm) receive nothing".*

21.     On May 22, 2009, the Debtor filed its Initial Disclosure Statement [docket #222], and in that Statement the Debtor explicitly explained the merger with SkyComm and that equity interests would receive nothing, "Because the Holders of Interests (after Merger with SkyComm) receive nothing on account of its interests, they are deemed to reject the plan and not entitled to vote."[20]

22.     The Disclosure Statements explained that the equity interest holders' rights were terminated:

> Subject to certain limited exceptions, and other than as provided in the plan itself or the confirmation order, the confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan and substitutes for such debt the obligations specified under the

---

[19]   Three equity interest holders did not have addresses.  None of them are Plaintiffs.

[20]   Docket #222 at p. 19.  Also, the final version of the Disclosure Statement [docket #264] contained this language on p. 21.

> confirmed plan, and terminates all rights and interests of equity security
> holders.

Initial Disclosure Statement at p. 18; Final Disclosure Statement p. 19.

23.     The Disclosure Statements also explained that Balaton would receive releases and

the old equity would be cancelled:

> [I]n exchange for the voluntary subordination of its DIP Claim and release
> of all other Claims, and in exchange for any other funds provided, Balaton
> group receives releases and indemnifications, the right to 100% of the
> New Common Stock in the Reorganized Debtor, and old equity interests
> of the Debtor are cancelled.

Id.; Final Disclosure Statement at p. 20.

*Disclosure Statements Explained Merger and Approved Under § 1125.*

24.     The Disclosure Statements explained in detail how the merger with SkyComm

would be accomplished and that the equity interests of SkyComm would have no appraisal

rights:

> While shareholders would normally have the right to dissent and seek a
> fair appraisal for their shares of a merger, a merger of a parent into the
> subsidiary and a subsidiary into the parent is exempt from this appraisal
> rights, so long as (as here) 100% of the shares of SkyPort are owned by
> SkyComm.  By vote of the majority shareholder, SkyPort and SkyComm
> will have identical bylaws and Articles of Incorporation prior to the
> merger.

Initial Disclosure Statement at p. 19; Id.

25.     The vast majority of Plaintiffs received the Initial Disclosure Statement from the

Debtor [docket #230].  The Initial Disclosure Statement was amended to address objections and

approved by this Court, as amended, by docket #265.  The approved Final Disclosure Statement

was also sent to virtually all Plaintiffs, either by the Clerk [docket #270] or the Debtor [docket

#268].

26.     The Clerk's office served the final Plan and Confirmation Order on Plaintiffs [docket #342].  The Order was never appealed or challenged.

## DRACO OBJECTS TO MERGER AND DISCHARGE OF CLAIMS

27.     On the eve of confirmation, Draco sought to shorten the exclusivity period and objected to the Debtor's Plan.[21]  Among the various reasons for seeking to deny confirmation of the Plan was that the Plan was "attempting a de facto substantive consolidation of a debtor entity with a non-debtor entity, and instantaneously wipes out the equity interests of the non-debtor shareholders."[22]

28.     Draco specifically explained that SkyComm shareholders would lose their investment:

> As described in Draco's filings, the most recent plan seeks to strip the equity holders of Clear Sky, a non-party to this Bankruptcy Case, of their investment through the use of the Bankruptcy Code while conducting a merger that fails to meet the legal requirements of Delaware law.

Motion to Terminate Exclusivity [docket #305] at p. 5.

*Draco Loses at Trial.*

29.     Thereafter, the Court conducted a trial on the motions, and the Debtor objected to Draco's standing.  Draco was represented by counsel and its principal, Adrien Pouliot, testified at the trial.  Counsel for Draco noted that the collapse of SkyComm into SkyPort and release of SkyPort claims would release all SkyComm claims:

> I believe that the plan, as currently drafted with the exculpation provisions the effect of the releases in light of the collapse it proposed, actually will have the impact of basically being a third-party release.

Transcript of 8/07/2009 confirmation hearing [docket #351] at p. 173.

---

[21]    Docket ##293, 299 (objections to confirmation) and docket #305 (terminate exclusivity), main case.

[22]    Docket #293 at p.1.

*Draco Consents to Merger and Release with an Exception for the ClearSky Claim.*

30.     The Debtor stated that the direct claim related to ClearSky between Draco on one hand and Balaton, Mr. Kubbernus and ClearSky on the other, would not be released.  The Confirmation Order was amended to explicitly restrict the release of the ClearSky-related claim as to Draco.  Draco then consented to the Plan, with the merger and release language contained therein.

### CONFIRMATION ORDER EFFECTS MERGER AND DISCHARGE

31.     With Draco's consent, the Court entered the Confirmation Order, effectuating the merger of SkyComm and SkyPort and entering broad releases and injunctions to suit.  The Confirmation Order stated, in relevant part:

> **Except as provided in the Plan or this Order, as of the Confirmation Date, all entities which have held, currently hold or may hold a claim or other debt or liability against the Debtor that is discharged are permanently enjoined from taking any of the following actions on account of such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing in any manner, any action or other proceeding against the Debtor or its properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or other award against the Debtor or its properties; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or its properties; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its properties; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the Plan.**

Confirmation Order at p. 8 (emphasis in original).

32.     The Confirmation Order further provided for (a) the release of all derivative claims against directors, and (b) the elimination of rights of the holders of equity interests:

> 32.  Except as expressly set forth in the Modification, pursuant to Section 13.7 of the Plan, **all officers, directors and professionals of the Debtor are hereby released from any and all causes of action held by the Debtor**.  Notwithstanding anything else contained herein, or in the Plan,

the releases contained in Section 13.7 of the Plan and approved hereby shall not act to release any claims or causes of action held by Draco Capital, Inc., Clear Sky Management, Inc., Clear Sky Investments, L.P, their investors, partners or affiliates against any person or entity other than the Debtor and the Reorganized Debtor.

33.   All rights of the holders of claims or interests of all classes under the Plan, including, without limitation, the right to receive distributions on account of such Claims or interests, shall hereinafter be limited solely to the right to receive such distributions exclusively as provided in the Plan, and, to the extent applicable, the provisions of this Order.  After the date hereof, the holders of such claims or interests shall have no other or further rights against the Debtor except as provided for in the Plan and this Order.

Confirmation Order at p. 9 (emphasis added).

33.     The Confirmation Order also effectuates the merger between SkyPort and SkyComm, leaving only the Debtor as the successor, "Specifically, the merger of SkyComm into SkyPort is approved such that SkyPort will be the surviving entity."[23]

34.     The Confirmation Order further stated that it was incorporating the Plan:

36.   The failure specifically to include any particular provisions of the Plan in this Order shall not diminish or impair the efficiency of such provision, it being the intent of the Court that the Plan be authorized and approved in its entirety.

Confirmation Order at p. 10.

### PLAN OF REORGANIZATION BECOMES FINAL

35.     The Plan, as mentioned above, merged SkyComm into SkyPort and cancelled all equity interests and discharged all claims.  The equity interests were cancelled in the Plan, a fact repeated in several different places:

4.5.2   Holders of Equity Interests shall receive no distribution or any property under the Plan on account of said Equity Interests, said Equity Interests shall be cancelled, and new common stock in the Reorganized Debtor shall be issued to Balaton, as otherwise provided for in the Plan.

---

[23]   Confirmation Order [docket #340] at p. 10.

Plan at 4.5.2. (p. 11).

> 6.3     Merger.  The Debtor is a wholly owned subsidiary of SkyComm.
> The only asset of SkyComm is the Debtor and the only liability of
> SkyComm is to CenturyTel.   SkyComm is a Delaware corporation.
> Pursuant to Delaware law, SkyComm (the parent company) will merge
> into the Debtor (the wholly owned subsidiary).   The merger will be
> accomplished by the vote of Balaton as shareholder of SkyComm.  Once
> merged, the Debtor's equity interests (formerly SkyComm's equity
> holders) will be cancelled and shares of the Reorganized Debtor re-issued
> in exchange for the Claims of Balaton.

Plan at 6.3 (pp. 11-12).

36.     The Plan, of course, contained extensive releases, exculpations and injunctions

against bringing the kind of suit brought here.  First, the Plan contained a broad, general release

of derivative claims:

> **13.5    Injunction.    The  Confirmation  Order  shall  include  a**
> **permanent injunction prohibiting the collection of Claims in any**
> **manner other than as provided for in the Plan.  All Holders of Claims**
> **shall be prohibited from asserting against the Debtor, Reorganized**
> **Debtor, Balaton or Insider Released Parties (defined infra) or any of**
> **their assets or properties, any other or further Claim based upon any**
> **act or omission, transaction or other activity of any kind or nature**
> **that occurred prior to the Confirmation Date, whether or not such**
> **Holder filed a proof of Claim.  Such prohibition shall apply whether**
> **or not (a) a proof of Claim based upon such debt is filed or deemed**
> **filed under Section 501 of the Bankruptcy Code; (b) a Claim based**
> **upon such debt is allowed under Section 502 of the Bankruptcy Code;**
> **or (c) the Holder of a Claim based upon such debt has accepted the**
> **Plan. This injunction also permits the Reorganized Debtor to enforce**
> **11 U.S.C. §525(a) upon improper revocation or restriction of licenses.**

Plan at 13.5 (emphasis in original).

37.     Next, the Plan contained a specific release for Mr. Kubbernus and Balaton that

reached back to the beginning of time and released all claims through confirmation:

> 13.7    Releases.    On  the  Effective  Date  and  pursuant  to  Section
> 1123(b)(3)(A) of the Bankruptcy Code, the Debtor, and to the maximum
> extent provided by law, its agents, release and forever discharge all claims,

including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:

13.7.1 <u>Robert Kubbernus and Balaton Group, Inc. ("Insider Released Parties"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtor or the Bankruptcy Estate and/or on account of the Debtor's Case.</u>

13.7.2 The release of these Insider Released Parties shall be conditioned upon the occurrence of the Effective Date.

Plan at 13.7 (emphasis added).

38.     Further, the Plan contained additional release language releasing the Debtor and insiders from all liability arising out of the Plan and the merger associated therewith:

13.8    Exculpation.  <u>Neither the Debtor, the Insider Released Parties, nor any of their respective present members, officers, directors, or employees shall have or incur any liability to any holder of a Claim or an Interest,</u> or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, <u>for any act or omission (specifically including negligence and gross negligence) in connection with, relating to, or arising out of the Chapter 11 Case,</u> the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions not otherwise released and which are the result of fraud or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Plan at 13.8 (underline added, original was entirely in boldface).

39.     The Confirmation Order was not appealed, and the Plan was consummated. Money was disbursed, and the reorganized Debtor has been operating under the Plan for nearly a year.  The Court has not yet been asked to vacate the Confirmation Order.  Indeed, nothing challenging the releases or confirmation has been raised to this Court.

**PLAINTIFFS' PETITION ATTACKS CONFIRMATION OF THE PLAN AND MERGER**

40.     On or about February 12, 2010, Plaintiffs filed the State Court Lawsuit against Balaton, Kubbernus, CenturyTel and related parties.[24]   No advance notice was given of the Petition and no demand letter was sent.

41.     In the instant Bankruptcy Case, in August of last year, the Court heard arguments that ClearSky was not entitled to SkyComm shares if there were less than $10 Million raised. The Court found that investors in ClearSky, specifically Draco, were not shareholders of SkyComm:

> [**By the Court**] Exhibit 1 of Draco says the maximum proceeds of this offering, if completed, will support the acquisition and restructuring of SkyCom and SkyPort by the partnership, **and to the extent words are supposed to mean something, and I think they are, the word says, the phrase says "if completed"** which suggests to me, just like going back to the language in the partnership agreement, it says, If you produce $10 million in cash, you're going to get stock, which impliedly says to me, if you don't, then you're not going to get stock, unless there's some other provision in this thing that says you are going to get stock.

Transcript of 8/7/2009 trial (ruling) [docket # 351] at p. 165 (emphasis added).

42.     Yet, in their Petition, Plaintiffs seek to re-try that issue and claim that the testimony was false and this Court's decision was wrong:

> Kubbernus deceitfully and falsely testified [in the Bankruptcy Court] that under the ClearSky IM, if ClearSky did not raise $10 million, Balaton had no Obligation to turn over any interest in SkyComm to ClearSky.

Petition at p. 60.

43.     Also in their Petition, Plaintiffs attack the legitimacy of the Plan, this Court's ordered merger in the Confirmation Order, and the cancellation of the shares as improper, fraudulent and a breach of duty:

---

[24]   Plaintiffs also sued an unrelated Canadian law firm for reasons that are unclear at best and frivolous at worst.

As a result of their blatantly false representations and unconscionable breach of their fiduciary duties to the shareholders of SkyComm and ClearSky, Balaton and Kubbernus were able to eliminate all other shareholders in SkyComm and secure 100% of the equity in SkyComm and SkyPort for themselves in the Bankruptcy proceeding and CenturyTel was able to secure the survival of the debt Balaton owed it.

CenturyTel acquiesced and cooperated with Balaton's and Kubbernus' plan, even though it knew that Kubbernus and Balaton were wrongfully and fraudulently using the plan to deprive the SkyComm shareholders of their interests in SkyComm.

Petition at p. 62-63.

44.     These allegations of "blatantly false" testimony and "fraudulently using the plan" were never raised to <u>this</u> Court.  If the claims had any merit, one would assume that they would have been addressed to the Bankruptcy Court at some point during the Bankruptcy Case.

45.     Plaintiffs also allege that the Disclosure Statement was false and that the testimony given to this Court was perjurious:

**[of the disclosure statement]** Balaton and Kubbernus falsely represented that under Delaware law, Balaton as purportedly the majority owner of the equity in SkyComm, had the legal right to approve a merger of SkyComm into its subsidiary, SkyCom. Without a shareholders' vote and without granting appraisal rights to the non-assenting shareholders;

Balaton and Kubbernus falsely represented that by consummating this merger, they could effectively wipe out the share interests of the other SkyComm shareholders, even thought SkyComm was not a debtor in the bankruptcy case.

* * *

[of CenturyTel] CenturyTel made numerous false representations in the Chapter 11 case, CenturyTel asserting that it held a secured claim of approximately $2,700,000 against SkyPort, alleging that $2,500,000 of the SkyComm debentures it had held had never been cancelled and that accumulated interest had brought this debt to $2,700,000.

SkyPort did not have a debt outstanding to CenturyTel, rather Balaton did. SkyPort did not have any debts outstanding to Balaton; rather Balaton and Kubbernus had misappropriated millions of dollars of SkyComm and investor funds.

Petition at p. 60.

46.     These allegations are alarming and ought to be addressed to this Court, not the State Court.  The State Court is powerless to grant any remedy to Plaintiffs for these alleged wrongs.  Indeed, those causes of action were released by Paragraph 13.8 of the Plan and barred by the Confirmation Order.

47.     Of course, Plaintiffs' allegations are less than accurate and this Court is aware of their absurdity.  Hence, the suit was brought in State Court before a judge unaware of the rigorous examination and trial on the confirmation issues.  Plaintiffs have engaged in gamesmanship to obtain a second attempt to challenge the bankruptcy reorganization.

### PLAINTIFFS' PETITION SEEKS TO CONTROL THE DEBTOR ON ACCOUNT OF CANCELED SHARES

48.     The Confirmation Order vested the reorganized (and merged) Debtor with all estate property and the ability to govern itself without concern to former shareholders, whose shares were cancelled by the Court's Order.

49.     Yet, Plaintiffs seek "*an order appointing a provisional director, trustee, managing agent, fiscal agent or other court appointed fiduciary for SkyComm and SkyPort.*"[25] That relief directly violates the Confirmation Order's cancellation of the equity interests of Plaintiffs, who knew of the Bankruptcy Case and, in at least one instance (Draco), objected.

50.     That relief would reverse the Court's Confirmation Order, undo the merger, and remove the Debtor's officers, whose actions were discharged.  The Court should consider Plaintiffs' Petition a direct assault on the Chapter 11 proceeding.

### PLAINTIFFS PETITION IS A DISCHARGED DERIVATIVE ACTION

51.     Plaintiffs have sued insiders of SkyPort (who also held board positions on the merged parent, SkyComm) for actions related to SkyPort's operations.  For instance, SkyPort,

---

[25]   Petition at pp. 72 and 81.

not SkyComm, has FCC licenses.  SkyPort, not SkyComm, had operations.  The non-CenturyTel

directors of SkyPort (not SkyComm) complained of the transfer of FCC license.

*Injury to SkyPort Alleged.*

52.     Plaintiffs' Petition alleges misuse of SkyPort by its directors, which caused an

injury to SkyPort.  For instance:

> CenturyTel and the CenturyTel Directors caused SkyPort to do significant work on a variety of projects for CenturyTel, including developing a consumer satellite television broadcast system and setting up a video distribution system.  SkyPort engineers worked with CenturyTel personnel on these projects, developing systems meeting CenturyTel's requirements.
>
> SkyPort built and successfully tested prototype systems for CenturyTel, but in each instance, CenturyTel refused to proceed with the project with SkyPort, and selected another vendor instead.
>
> CenturyTel refused to pay SkyPort for its work or the other expenses incurred by SkyPort in setting up the systems for CenturyTel, asserting, through the CenturyTel Directors, that since it was providing all of SkyPort's funding anyway, it should not have to pay for its services.

Petition at ¶111-113.

53.     Plaintiffs also allege that SkyPort operated without necessary FCC approval and

that the CenturyTel directors injured minority shareholders by doing so.[26]  The directors

involved were necessarily SkyPort directors exercising their duties for SkyPort: "The CenturyTel

Defendants caused SkyPort to file the 2006 Transfer Applications . . . over the objections of the

Non-CenturyTel Defendants."  Petition at ¶197.

54.     Plaintiffs fail to mention that the FCC has approved Balaton and Mr. Kubbernus

and consented to the current structure of SkyPort.  Plaintiffs further fail to mention that the sum

total paid to the FCC by SkyPort or Balaton for a regulatory fine is $3,000.  In any case, any

---

[26]     Petition at ¶167, *et seq.*

injury for SkyPort's operating in violation of regulations was an injury to SkyPort and is a derivative claim.

*"Disclaimers" Show Bad Faith.*

55.     Plaintiffs are aware that they are pursuing discharged claims in violation of the discharge injunction and in violation of Rule 11.   Accordingly, Plaintiffs put two feckless disclaimers in the middle of their Petition:

> This Petition does not allege a derivative action on behalf of SkyComm or SkyPort.  Plaintiffs are asserting only direct claims for violations of duties owed directly to Plaintiffs.  Any pleading of conduct that violates duties to corporations is made solely to evidence conduct that also violates duties owed directly to Plaintiffs.

Petition at ¶80.

> The allegations in this petition, are except as noted as to a particular plaintiff, made upon information and belief.  Plaintiffs do not have access to many of the documents relevant to this case.

Petition at ¶9.

56.     These "disclaimers" contradict Fed. R. Civ. P. 8 and 11 and the general rule of notice pleading.  Taking the disclaimers at their word, the Court may dismiss the suit for failing to state anything other than conjecture.   One may not plead an entire complaint "upon information and belief."   One may not, commensurate with the Rules, state a factual claim for a derivative cause of action, seek derivative relief (including control over the corporation), and then claim "this is not a derivative cause of action."  These disclaimers (and others) evidence bad faith and an attempt at artful drafting, which falls short of the ethical obligations of a counsel under Rule 11.

*Plaintiffs Use "SkyComm" to Describe Discharged SkyPort Claims.*

57.     More importantly, Plaintiffs attempt to argue that alleged injuries to SkyPort (which are clearly discharged) were somehow not discharged because they use the word "SkyComm."   For instance, "CenturyTel repeatedly failed to provide timely financing to SkyComm so as to enable SkyComm to execute its business plan."[27]   Clearly, SkyComm had no operations or personnel or business plan—that claim is against SkyPort.

58.     Likewise, SkyComm had no sales or employees—it was a holding company.  Yet, Plaintiffs artfully seek to avoid the SkyPort discharge by re-naming the SkyPort sales staff as SkyComm employees, "CenturyTel and the CenturyTel Directors hired a sales staff for SkyComm that did not have experience in satellite telecommunications sales and this negatively impacted SkyComm's sales efforts."  Petition at ¶130.  Again, SkyComm had no employees or "sales staff"—Plaintiffs' alleged injuries were alleged injuries to SkyPort—which would have (allegedly) been the one deprived of sales.

59.     SkyComm had no operations, but Plaintiffs hope to skirt that issue while simultaneously claiming that CenturyTel directors were negligent in <u>operating</u> a communications company:

> CenturyTel and the CenturyTel Directors grossly mismanaged SkyComm and failed to exercise reasonable care in the performance of their duties. Their experience was in land-based telecommunications and they did not have the experience or know-how to operate a satellite based communications company or sell satellite communications services.

Petition at ¶129.

60.     Since SkyPort was the only entity selling services and operating a communications company, one must surmise that Plaintiffs mean "SkyPort" when the Petition

---

[27]    Petition at ¶126.

says "SkyComm".  Alleged injuries to a "communications company" from bad directors would have to be a derivative claim.  The Petition implicitly acknowledges that Plaintiffs lack standing to bring such claims.

*Plaintiffs Assert a Laundry List of Derivative Claims.*

61.    Undaunted, the Petition marches on for 111 pages alleging wrongs that ignore the effect of the Confirmation Order and are clearly discharged/derivative claims.  Such as:

(a)    "SkyComm lost customers" ¶138 (only SkyPort had customers).

(b)    "Kubbernus proposed to take control of SkyComm" ¶149 (Skyport).

(c)    "CenturyTel Directors pursued the interests of CenturyTel at the expense of the SkyComm shareholders" ¶151 (derivative claim).

(d)    "the management of Skyport began to report to Balaton . . . .  Kubbernus took control over personnel" ¶184. (SkyPort derivative claim).

(e)    "transfer of control could jeopardize SkyComm's licenses" ¶186 (SkyPort derivative claim—only SkyPort had licenses).

(f)    "CenturyTel's decision to become a shareholder in SkyComm was presented by both Kubbernus and CenturyTel as a major benefit" ¶224 (derivative).

(g)    "Defendants [as directors] caused SkyComm to issue a total of 43,031,166 shares" ¶231 (derivative).

(h)    "CenturyTel defendants [directors] gave Balaton and Kubbernus control of SkyComm" ¶237 (derivative).

(i)    "CenturyTel's acquisition of SkyComm shares was never disclosed to the FCC" ¶239 (derivative).

(j)    "Kubbernus acted as Chairman of the Board of Directors of both SkyComm and SkyPort.  Kubbernus and Balaton ran the company [sic] for their own benefit" ¶276 (Skyport derivative claim).

(k)    Balaton and Kubbernus [as directors] caused SkyComm to issue to Balaton 130,926,766 shares" ¶278 (derivative claim).

(l)    "Balaton and Kubbernus [as directors] paid themselves massive fees from SkyComm" ¶279 (derivative claim).

(m)    "Balaton and Kubbernus caused SkyPort to pay Balaton approximately $1 Million" ¶280 (SkyPort derivative claim).

(n)    "Balaton and Kubbernus caused SkyPort to pay Balaton approximately $2.4 Million" ¶281 (SkyPort derivative claim).

(o)     "Balaton and Kubbernus failed to hold required annual shareholders meetings" ¶289 (SkyPort derivative claim).

(p)     "Balaton and Kubbernus grossly mismanaged SkyComm and SkyPort" ¶291 (the essence of a derivative claim).

62.     The Court looks at the totality of a pleading to determine what it says.  There is one part of the Petition that was not discharged—the claim by Draco involving ClearSky.  That claim survives, albeit perhaps in a Delaware or Canadian forum.  Excluding the claim by Draco against ClearSky, the Petition is a manifesto of petty grievances brought by disaffected minority shareholders who were aware of the bankruptcy (and its merger and releases).  The Petition was brought as if the Confirmation Order was never entered.  As a result, the released parties have been injured in an amount to be shown at trial.

63.     Plaintiffs are not the real party in interest to assert the claims alleged in the Petition.  The suit is a thinly-veiled derivative suit.  "To determine whether a complaint states a derivative or an individual cause of action, <u>we must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiff's designation or stated intention</u>."  *Lipton v. News Int'l, PLC*, 514 A.2d 1075, 1078 (Del. 1986) (emphasis added, citing *Elster v. American Airlines, Inc.*, 34 Del. Ch. 94, 100 A.2d 219, 223 (Del. Ch. 1953); *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1069-70 (Del. Ch. 1985)).

64.     Texas and Delaware law[28] define a shareholder's derivative action as an action or proceeding brought by a stockholder on behalf of the corporation for harm done to the corporation.  *See 2055 Inc. v. McTague*, No. 05-08-01057-CV, 2009 Tex. App. LEXIS 6399, at *25-26 (Tex. App.—Dallas Aug. 18, 2009, pet. denied); *Tooley v. Donaldson, Lufkin, &*

---

[28]   SkyComm was a Delaware corporation and formerly the 100% shareholder of SkyPort, a Texas corporation. The merger of the two left only a single corporation—Skyport—a Texas corporation.

*Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004); *Smith v. Waste Mgmt. Inc.*, 407 F.3d 381, 384 (5th Cir. Tex. 2005) (looking to the Delaware Supreme Court's opinion in *Tooley*).

65.     In *Smith v. Waste Mgmt. Inc.*, the Fifth Circuit looked to *Tooley* to decide whether a claim was direct or derivative, quoting: "The analysis must be based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Smith*, 407 F.3d at 384 (quoting *Tooley*, 845 A.2d at 1035) (internal quotations omitted).  "The stockholder must demonstrate that the duty breached was owed to the stockholder and that <u>he or she can prevail</u> <u>without showing an injury to the corporation</u>." *Id.* at 384 (emphasis added, citation omitted).

66.     Moreover, claims of mismanagement are the very essence of a derivative suit. "Delaware courts have long recognized that actions charging 'mismanagement which depress the value of the stock allege a wrong to the corporation; i.e., the shareholders collectively, to be enforced by a derivative action.'" *Lewis v. Spencer*, 577 A.2d 753, 1990 Del. LEXIS 154, *5 (Del. 1990) (quoting *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 353 (Del. 1988)). "A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders. Any devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder." *Kramer*, 546 A.2d at 353. "[A] plaintiff alleges a special injury and may maintain an individual action [only] if he complains of an injury distinct from that suffered by other shareholders or a wrong involving one of his contractual rights as a shareholder." *Lipton*, 514 A.2d at 1078.

67.     Similarly, analysis in this case leads to only one conclusion—Plaintiffs' claims[29] are shareholder derivative claims that can only be presented by Plaintiffs through a shareholder derivative lawsuit.  Further confirming that Plaintiffs' interests are derivative, Plaintiffs cannot prove their injury without also simultaneously proving corporate injury.  *Smith*, 407 F.3d at 385.

## REMOVAL

68.     Pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027, Defendants hereby remove the claims asserted by Plaintiffs in the State Court Lawsuit against Defendants (the "Removed Claims") to the United States Bankruptcy Court for the Southern District of Texas, Houston Division, which is the district and division within which the court is located where the State Court Lawsuit is pending.

69.     Pursuant to Bankruptcy Local Rule 9027, the names and addresses of the parties to the Removed Claims which are being removed are listed on the attached ***Exhibit B***.

70.     The name, address and telephone numbers of counsel are listed as follows:

Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Samuel Goldman
Samuel Goldman & Assoc.
100 Park Ave 20th FL
New York, NY 10017

Harold B. Obstfeld
Harold B. Obstfeld, P.C.
100 Park Ave 20th FL
New York, NY 10017

---

[29]   In this case, Plaintiffs have an "Interest" as defined by the Plan.  *See* art.2 Def'ns, 2.1.32 ("an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).").

71.      Copies of all papers that have been filed in the court from which the State Court Lawsuit is removed are attached.

### NOTICE

72.      Pursuant to Bankruptcy Rule 9027(b), copies of this Notice of Removal are being served on all other parties to the State Court Lawsuit.

73.      Pursuant to Bankruptcy Rule 9027(c), a copy of this Notice of Removal is being filed with the Clerk of the 113th Judicial District Court, Harris County, Texas, from which the Removed Claims are removed.

### ATTACHMENTS

74.      Pursuant to Federal Rule of Bankruptcy Procedure 9027 and Bankruptcy Local Rule 9027-1(b), the following are attached:

(a)      Plaintiffs' Original Petition;

(b)      Return of Service on Citation to Robert Kubbernus;

(c)      Any other documents filed of record in the State Court Docket (as they are obtained).

75.      Each of the attachments is a true and correct copy of the pleadings and orders entered in the State Court Lawsuit.

## CONCLUSION

For the reasons set out above, all claims of Plaintiffs asserted against the CenturyTel Defendants in the State Court Lawsuit are hereby removed to the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

DATED: March 26, 2010.

Respectfully submitted,

MCKOOL SMITH P.C.

By: _____*/s/ Hugh M. Ray, III*_____
      HUGH M. RAY, III
      State Bar No. 24004246
      ROBERT M. MANLEY
      State Bar No. 00787955
      600 Travis, Suite 7000
      Houston, Texas 77002
      Telephone: (713) 485-7300
      Facsimile: (713) 485-7344

ATTORNEYS FOR ALL DEFENDANTS
(EXCEPT WILSON VUKELICH, LLP)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the above and foregoing were forwarded via U.S. first class mail, postage prepaid, to Plaintiffs' counsel and by international registered mail to Defendant, Wilson Vukelich, LLP, at the addresses noted below on this 26th day of March, 2010:

<u>Plaintiffs' Counsel</u>:
Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Samuel Goldman
Samuel Goldman & Assoc.
100 Park Ave 20th FL
New York, NY 10017

Harold B. Obstfeld
Harold B. Obstfeld, P.C.
100 Park Ave 20th FL
New York, NY 10017

<u>Wilson Vukelich, LLP</u>:
Wilson Vukelich, LLP
Valleywood Corporate Centre
60 Columbia Way, Ste 710
Markham, Ontario
L3R 0C9
CANADA

        _/s/ Hugh M. Ray, III_
        HUGH M. RAY, III

*EXHIBIT A*
**Docket #43 – Main Case**

# United States Bankruptcy Court
## Southern District of Texas

In re    **SkyPort Global Communications, Inc.**        Case No.   **08-36737-H4-11**

Debtor        Chapter      **11**

# LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
| --- | --- | --- | --- |
| **See attached Exhibit A of Equity Owners** | | | |

# DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the President and CEO of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date \_\_\_\_ **11/20/08** \_\_\_\_        Signature _____

**Patrick Brant**
**President and CEO**

*Penalty for making a false statement or concealing property*: Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

**0** continuation sheets attached to List of Equity Security Holders

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037       Best Case Bankruptcy

**SkyComm Technologies Corp.**
**EXHIBIT "A" to List of Equity Holders**

| Investor | Address | Shares | Ownership |
|---|---|---|---|
| Balaton Group Inc. | 152 King St. East, suite 400, Toronto, ON M5A 1J3 | 431,963,880 | 58.15% |
| CenturyTel | 100 Centurytel Drive, Monroe, LA 71203 | 49,161,318 | 6.62% |
| Pat Brant | 10186 Hillington Ct., Vienna, Va. 22182 | 36,212,291 | 4.88% |
| Sequoia Aggressive Growth Fund | Sequoia Aggressive Growth Fund Ltd  c/o Semper Gestion SA,  5 rue Pedro-Meylan, 1208 Geneva, Switzerland | 27,530,711 | 3.71% |
| Sequoia Diversified Growth Fund | Sequoia Aggressive Growth Fund Ltd  c/o Semper Gestion SA,  5 rue Pedro-Meylan, 1208 Geneva, Switzerland | 12,815,180 | 1.73% |
| Credit Agricole | Chemin De Beree 46-48, 1010 Laosanne 10 La Sallaz, Switzerland, Oliver Apostoloski | 24,042,888 | 3.24% |
| Key Special Situations Fund | CIM Investment Management Limited, 1 Regenet Street, London SW1Y 4NS, England | 16,102,965 | 2.17% |
| Steve Clary | 2200 N. Rodney Parham #210, Little Rock, AR 72212 | 14,081,237 | 1.90% |
| Rig III | Rig III, c/o Semper Gestion SA, 40 A route de malagnou, 1208 Geneva, Switzerland | 12,822,874 | 1.73% |
| Daniel Elstein | 750 Sagg- Main St., Sagaponack, NY  11962 | 8,330,267 | 1.12% |
| Puddy, Ltd. | 6193 Hickory Hollow Lane, Conroe, TX 77304 | 7,929,500 | 1.07% |
| Aran Asset Management SA | Aran Asset Management SA, Bahnofplatz, P.O.BOX 4010, 6304 Zug, Switzerland | 7,926,280 | 1.07% |
| Sue Ann Graves | 44 Bretagne, Little Rock, AR 72223 | 7,635,851 | 1.03% |
| John Robert Graves | 44 Bretagne, Little Rock, AR 72223 | 7,635,851 | 1.03% |
| Evest Sky, L.P. | 2200 N. Rodney Parham #210, Little Rock, AR 72212 | 7,373,396 | 0.99% |
| Movada, Ltd. | 6193 Hickory Hollow Lane, Conroe, TX 77304 | 6,384,972 | 0.86% |
| Anglo-French Technical Assistance Corp. | ANTAS C/O Clariden Leu, M.Patrick Horner, 1 Quai du Mont Blanc, PO Box 1304, CH-1211 Geneva 1, Switzerland | 4,000,737 | 0.54% |
| Joseph K. and Ann L. Baker, JTCWRS | 30721 Berry Creek Dr., Georgetown, TX 78628 | 4,000,015 | 0.54% |
| Wayne C. Fox | Suite 5865, The First Canadian Place, P.O. Box 291, 100 King Street West, Toronto, ON, M5X 1C9 | 8,000,000 | 1.08% |
| Klotz Investments LTD | 1609 Emory Circle, Plano, TX  75093 | 4,000,000 | 0.54% |
| John E. Panneton | Suite 5865, The First Canadian Place, P.O. Box 291, 100 King Street West, Toronto, ON, M5X 1C9 | 4,337,500 | 0.58% |
| Del Sorbo Family Trust | Suite 5865, The First Canadian Place, P.O. Box 291, 100 King Street West, Toronto, ON, M5X 1C9 | 4,337,500 | 0.58% |
| David Currie | Suite 5865, The First Canadian Place, P.O. Box 291, 100 King Street West, Toronto, ON, M5X 1C9 | 4,337,500 | 0.58% |
| Byron Messier | Suite 5865, The First Canadian Place, P.O. Box 291, 100 King Street West, Toronto, ON, M5X 1C9 | 5,000,000 | 0.67% |

| | | | |
|---|---|---|---|
| Burnaby Business Solutions Inc. | Suite 5865, The First Canadian Place, P.O. Box 291, 100 King Street West, Toronto, ON, M5X 1C9 | 4,337,500 | 0.58% |
| Sunvenus Holdings Limited | 284 Makarios Ave., Fortuna Court Block B Limassol, Cypres Delivery of Certificate to: Smith Barney, New York                                    Attn: David Beechler, 399 Park Avenue, 12th Floor New York, NY 10022 | 2,404,289 | 0.32% |
| ECAL Partners, Ltd. | 6611 Centre Place Circle, Spring, TX 77379 | 375,851 | 0.05% |
| Eric Galmard | P.O. Box 130296, Houston, TX 77219-0296 | 2,000,020 | 0.27% |
| Matteo Novelli | 51 Rue De Naples, 75008 Paris, France | 1,763,145 | 0.24% |
| 99869 Canada Inc. | 1320 Greaham Blvd. Suite 115, Mont Royal, PQ H3P 3C8 | 1,602,859 | 0.22% |
| Martin Pollak | 16 Springwood Path, Laurel Hollow-Syosset, NY 11791 | 1,364,412 | 0.18% |
| Gloster Holdings, LLC | 100 Park Avenue: 20th Floor, New York, NY 10017 | 1,163,971 | 0.16% |
| Whiz Kid Ventures | 4700 South Bowman Rd., Little Rock, AR 72210 | 1,000,000 | 0.13% |
| Evest Group, LLC | 2200 N. Rodney Parham #210, Little Rock, AR 72212 | 887,508 | 0.12% |
| Palos Capital Pool | 1 Place Ville Marie #1812, Montreal, PQ H3B 4A9 | 884,558 | 0.12% |
| Elias N Jabbour | P.O. Box 208, Surra 45703 Kuwait | 801,430 | 0.11% |
| Darshan Khurana | 6110 Bernard Mergler, Cote St. Luc, PQ H3X 4A5 | 801,430 | 0.11% |
| Daniel Piergentili | 1681 Brown Ct., Long Mount, CO 80503 | 801,430 | 0.11% |
| Chet Gutowsky | 302 Pinesap Dr., Houston, TX 77079 | 775,010 | 0.10% |
| Milam Trust | 135 Amarillo Drive, Magnolia, TX 77354 | 500,010 | 0.07% |
| John Llewellyn | 1778 CR 407, Gonzales, TX 78629 | 500,000 | 0.07% |
| Guy and Lisa Fielder, JTCWRS | 2616 Maria Anna Rd., Austin, TX 78703 | 500,000 | 0.07% |
| CitiGroup Global Mkts IRA FBO Daniel Elstein | 750 Sagg- Main St., Sagaponack, NY 11962 | 412,500 | 0.06% |
| Simon Meredith | Mr. Simon Meredith, 40 Lena Gardens, London W6 7PZ, United Kingdom | 320,571 | 0.04% |
| Thomas and Karen Orem, JTCWRS | 29838 Hillary Ave, Easton MD 21601 | 300,000 | 0.04% |
| Ashwin M. Sairam | 159 Dresden Ave., Mont Royal, PQ H3P 3K1 | 299,069 | 0.04% |
| Diya Al-Sarraj | P.O. Box 42042, AbuDhabi, United Arab Emirates | 240,429 | 0.03% |
| Lynn Joyce Elstein Trust | 485 Oriskany Crt., Osprey, FL 34229 | 200,000 | 0.03% |
| Clarence Marshal | 12701 South Harvard Ave., Jenks, OK 74037 | 200,000 | 0.03% |
| Cecily McCrary Lane | 28933 Pleasant Forest, Magnolia, TX 77355-4169 | 200,000 | 0.03% |
| Bradford DeWitt McCrary | 76 Eaglerock Circle, The Woodlands, TX 77381 | 200,000 | 0.03% |
| Joyce Nisker Takefman | 3577 Atwater Ave., apt. 1513, Montreal PQ, H3H 2R2 | 178,804 | 0.02% |
| Joseph A. Lopez | 237 N. Mountain Ave., Montclair, NJ 07042 | 150,000 | 0.02% |
| DE & JD Associates, Inc. | 750 Sagg- Main St., Sagaponack, NY 11962 | 150,000 | 0.02% |
| George Metcalf | 957 Nasa Rd 1, #142, Houston, TX 77058 | 130,000 | 0.02% |
| Douglas Whitworth | 11140 Aerospace Avenue, Houston, TX 77034 | 120,000 | 0.02% |
| BLF Partners | 6526 Radley Drive, Spring, TX 77389 | 115,500 | 0.02% |
| John A. Rees | 11719 Hinson Rd. Suite 130, Little Rock, AR 72212 | 110,000 | 0.01% |
| Melvyn Reiser | 996 Henhawk Rd., Baldwin, NY 11510 | 105,000 | 0.01% |
| Lyn McCrary Brown | 5750 N. Major Drive, #503, Beaumont, TX 77713 | 100,000 | 0.01% |

| | | | |
|---|---|---|---|
| Laurie McCrary Reasons | 16 Brighton Way, Huntington, WV 25705 | 100,000 | 0.01% |
| Jeff Chiravalle | n/a | 80,000 | 0.01% |
| Bruce Dunlop | 11140 Aerospace Avenue, Houston, TX 77034 | 80,000 | 0.01% |
| David B. Boyd, MD | n/a | 77,000 | 0.01% |
| Bryan W. Harle, MD | 7711 Louis Pasteur, Ste 200, San Antonio, TX 78229 | 77,000 | 0.01% |
| Middle East Holdings, LLC | n/a | 60,000 | 0.01% |
| Robert Foote | n/a | 50,000 | 0.01% |
| Lawrence Solomon | 5419 N.W. 42nd Ave., Boca Raton, FL 33496 | 50,000 | 0.01% |
| David Togut and Tracy Elstein | 422 E. 72nd St. - 8A & 8B, New York, NY 10021 | 50,000 | 0.01% |
| NLMC Inc. | 16770 Imperial Valley Dr. Ste. 200 Houston, Tx. 77060 | 40,000 | 0.00539% |
| Philippe Assous | 42396 Cascata Street Indio, CA 92203 | 25,000 | 0.00337% |
| Jason Charles Togut Trust | 422 E. 72nd St. - 8A & 8B, New York, NY 10021 | 25,000 | 0.00337% |
| BMT Grantor Trust | 422 E. 72nd St. - 8A & 8B, New York, NY 10021 | 25,000 | 0.00337% |
| Bella Krieger | 3912 South Ocean Blvd., #404, Highland Beach, FL 33487 | 25,000 | 0.00337% |
| Barry Klein | 77 Ross Street, Brooklyn, NY 11211 | 25,000 | 0.00337% |
| Michael Stein | 385 South End Ave., Apt# 6-C, New York, NY 10280-1041 | 20,000 | 0.00269% |
| Paul Gignilliat | 8301 Duckwood Drive, Cicero, NY 13039 | 10,000 | 0.00135% |
| Palomero, Ltd. | 25025 I-45 N, Suite 410, The Woodlands, TX 77380 | 5,200 | 0.00070% |
| Yecheskel Kahan | 3 Kalev Way, #302, Monroe, NY 10950 | 5,000 | 0.00067% |
| Robert Amante | 10076 Elcaballo Ct., Delray Beach, FL 33446 | 5,000 | 0.00067% |
| **Total** | | 742,792,209 | 100.00% |

## EXHIBIT B
## Parties to the Removed Action

Joanne Schermerhorn
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

John K. Waymire
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Chet Gutowsky
302 Pinesap Drive
Houston, TX 77079

John Llewellyn
1778 CR 407
Gonzales, TX 78629

Joseph A. Lopez
237 N. Mountain Ave
Montclair, NJ 07042

Robert Foote
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

BLF Partners, Ltd.
6526 Radley Drive
Spring, TX 77379

ECAL Partners, Ltd.
6611 Centre Place
Spring, TX 77379

Whiz Kid Ventures, LLC
4700 South Bowman Rd
Little Rock, AR 72210

Bella Krieger
3912 South Ocean Blvd #404
Highland Beach, FL 33487

Martin Pollak
16 Springwood Path
Laurel Hollow-Syosset, NY 11791

Gloster Holdings, LLC
100 Park Ave 20th FL
New York, NY 10017

Melvyn Reiser
996 Henhawk Rd
Baldwin, NY 11510

Barry Klein
77 Ross Street
Brooklyn, NY 11211

Yecheskel Kahan
3 Kalev Way #302
Monroe, NY 10950

John A. Rees
11719 Hinson Rd, Ste 130
Little Rock, AR 72212

Brian W. Harle, MD
7711 Louis Pasteur, Ste 200
San Antonio, TX 78229

Michael Stein
385 South End Ave Apt #6-C
New York, NY 10280-1041

Lawrence Solomon
5419 NW 42nd Ave
Boca Raton, FL 33496

Tracy Elstein & David Togut
422 E. 72nd Street – 8A & 8B
New York, NY 10021

Jason Charles Togut Trust
422 E. 72nd Street – 8A & 8B
New York, NY 10021

BMT Grantor Trust
422 E. 72nd Street – 8A & 8B
New York, NY 10021

Lynn Joyce Elstein Trust
485 Oriskany Court
Osprey, FL 34229

Charles Stack
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Joseph Baker
30721 Berry Creek Dr.
Georgetown, TX 78628

Movada, Ltd.
6193 Hickory Hollow Lane
Conroe, TX 77304

Puddy, Ltd.
6193 Hickory Hollow Lane
Conroe, TX 77304

Draco Capital, Inc.
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Edward Pascal
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Robert Mendel
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Stanley Beraznik
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Don Dui
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Ben Ariano
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

3790168 Canada, Inc.
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

Peter Taylor
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

John E. Panneton
Suite 5865
The First Canadian Place
P O Box 291
King Street West
Toronto, Ontario
M5X 1C9

Wayne C. Fox
Suite 5865
The First Canadian Place
P O Box 291
King Street West
Toronto, Ontario
M5X 1C9

David Currie
Suite 5865
The First Canadian Place
P O Box 291
King Street West
Toronto, Ontario
M5X 1C9

Byron Messier
Suite 5865
The First Canadian Place
P O Box 291
King Street West
Toronto, Ontario
M5X 1C9

Darshan Khurana
6110 Bernard Mergler
Cote St. Luc
PQ H3X 4A5

Mateo Novelli
51 Rue De Naples
75008 Paris, France

Diya Al-Sarraj
P O Box 42042
AbuDhabi, UAE

Sequoia Aggressive Growth Fund, Ltd.
c/o Semper Gestion SA
5 rue Pedro-Meylan
1208 Geneva, Switzerland

Sequoia Diversified Growth Fund, Ltd.
c/o Semper Gestion SA
5 rue Pedro-Meylan
1208 Geneva, Switzerland

Rig III Fund, Ltd.
c/o Semper Gestion SA
5 Rue Pedro-Meylan
1208 Geneva, Switzerland

Aran Asset Management SA
Bahnofplatz
P O Box 4010
6304 Zug., Switzerland

Semper Gestion SA
5 Rue Pedro-Meylan
1208 Geneva, Switzerland

Eosphoros Asset Management, Inc.
c/o Eric Fryar
The Fryar Law Firm
1001 Texas Ave, Ste 1400
Houston, TX 77002-3194

CenturyTel, Inc. (a/k/a CenturyLink)
100 CenturyTel Drive
Monroe, LA 71203

Clarence Marshall
12701 South Harvard Ave
Jenks, OK 74037

R. Stewart Ewing, Jr.
1511 Frenchmans Bend Rd
Monroe, LA 71203

Michael E. Maslowski
3431 Westminster Ave
Monroe, LA 71201

Harvey P. Perry
2778 Point Drive
Monroe, LA 71201

Robert Kubbernus
11140 Aerospace Ave
Houston, TX 77034

Balaton Group, Inc.
152 King Street East, Ste 400
Toronto, Ontario
M5A 1J3
CANADA

Bankton Financial Corporation
152 King Street East, Ste 400
Toronto, Ontario
M5A 1J3
CANADA

Bankton Financial Corporation, LLC
Attn: Registered Agent, R. Kubbernus
319 Northcliff Ridge Lane
Friendswood, TX 77546

ClearSky Management, Inc.
152 King Street East, Ste 400
Toronto, Ontario
M5A 1J3
CANADA

Wilson Vukelich, LLP
Valleywood Corporate Centre
60 Columbia Way, Ste 710
Markham, Ontario
L3R 0C9
CANADA

ClearSky Investments, LP
(to be contacted through counsel only)
McKool Smith P.C.
Attn: Hugh M. Ray, III
600 Travis, Suite 7000
Houston, TX 77002

Exhibit B-4