**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SKYPORT GLOBAL | § | CASE NO. 08-36737-H4-11 |
| COMMUNICATIONS, INC., | § | (Chapter 11) |
| Debtor | § | |
| | § | |

| | | |
|---|---|---|
| JOANNE SCHERMERHORN, JOHN K. WAYMIRE, CHET | § | |
| GUTOWSKY, JOHN LLEWELLYN, JOSEPH A. LOPEZ, | § | |
| ROBERT FOOTE, BLF PARTNERS, LTD., ECAL PARTNERS, | § | |
| LTD., WHIZKID VENTURE, LLC, BELLA KRIEGER, MARTIN | § | |
| POLLAK, GLOSTER HOLDINGS, LLC, MELVYN REISER, | § | |
| BARRY KLEIN, CHESKEL KAHAN, JOHN A. REES, BRIAN W. | § | |
| HARLE, MICHAEL STEIN, LAWRENCE SOLOMON, TRACY | § | |
| ELSTEIN & DAVID TOGUT, JASON CHARLES TOGUT | § | |
| TRUST, BMT GRANTOR TRUST, LYNN JOYCE ELSTEIN | § | |
| TRUST, CHARLES STACK, JOSEPH BAKER, MOVADA, LTD., | § | |
| PUDDY, LTD., DRACO CAPITAL, INC., EDWARD PASCAL, | § | |
| ROBERT MENDEL, STANLEY BERAZNIK, DON DUL, BEN | § | |
| ARIANO, 3791068 CANADA, INC., PETER TAYLOR, JOHN E. | § | |
| PANNETON, WAYNE C. FOX, DAVID CURRIE, BYRON | § | |
| MESSIER, DARSHAN KHURANA, MATEO NOVELLI, DIYA | § | |
| AL-SARRAJ, SEQUOIA AGGREESSIVE GROWTH FUND, | § | |
| LTD., SEQUOIA DIVERSIFIED GROWTH FUND, LTD., RIG III | § | |
| FUND, LTD., ARAN ASSET MANAGEMENT SA, SEMPER | § | |
| GESTION SA, and EOSPHOROS ASSET MANAGEMENT, INC. | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | ADVERSARY NO. 10-3150 |
| | § | |
| CENTURYTEL, INC. (a/k/a CENTURYLINK), CLARENCE | § | JURY TRIAL DEMANDED |
| MARSHALL, R. STEWART EWING JR., MICHAEL E. | § | |
| MASLOWSKI, HARVEY P. PERRY, ROBERT KUBBERNUS, | § | |
| BALATON GROUP, INC., BANKTON FINANCIAL | § | |
| CORPORATION, BANKTON FINANCIAL CORPORATION, LLC, | § | |
| CLEARSKY MANAGEMENT, INC., WILSON VUKELICH, LLP | § | |
| and CLEARSKY INVESTMENTS, LP | § | |
| Defendants | § | |

**DECLARATION OF ADRIEN POULIOT IN OPPOSITION
TO WILSON VUKELICH LLP'S MOTION TO DISMISS**

Adrien Pouliot declares, pursuant to 28 U.S.C. § 1746, as follows:

1. My name is Adrien Pouliot. The facts stated in this declaration are based upon my personal knowledge and under penalty of perjury are true and correct. I am over 18 years of age and have never been convicted of a felony.

2. Draco Capital Inc. ("Draco"), a company I control, initially lent ClearSky Investments LP ("ClearSky") the funds needed for ClearSky to fund its obligations under the DIP Loan Agreement and the Exit Loan Agreement. It was intended that Draco's loan would be of a short-term nature and that, upon reimbursement, the loan could be reinvested into equity in ClearSky. It was represented to me that ClearSky was to own a controlling interest in SkyComm. I was promised by Robert Kubbernus ("Kubbernus") that Draco would own approximately 50% of ClearSky's equity and that ClearSky would own over 80% of the equity in SkyComm. The documents that were circulated to me by Balaton and Balaton's counsel, Wilson Vukelich, confirmed these promises.

3. Wilson Vukelich acted as primary counsel to Kubbernus, Balaton, ClearSky Management and ClearSky in connection with the SkyComm/ClearSky transaction, acted as escrow agent for ClearSky funds and acted as a conduit between SkyComm, in Texas, and Draco, in Montreal. In furtherance of these roles, Wilson Vukelich engaged in regular communications with parties in Texas, including SkyComm. One example of Wilson Vukelich's communications into Texas is Goldenthal's facsimile transmission to Kubbernus, at the hotel he would reside in in Houston while tending to SkyPort business, a copy of which is annexed hereto as Exhibit A. This facsimile shows Goldenthal transmitting to Kubbernus the documents necessary to fund the March 31, 2006 SkyComm funding request to Balaton and Balaton's piggyback request to ClearSky and ClearSky's further request to Draco (and its predecessor, 9037-9561 Quebec Inc.) and Kubbernus' return of the documents, signed by him on behalf of

2

ClearSky, Balaton, Watershed Funds and ClearSky Management. All of this went through Wilson Vukelich.

4.     These documents demonstrate that Wilson Vukelich acted in a far greater capacity than as merely a trustee for the ClearSky Investors' funds without any responsibilities, as Goldenthal states in his Declaration. Wilson Vukelich was an essential conduit for the transfer of funds from the ClearSky Investors into SkyComm.

5.     On March 31, 2006, just before the applications for approval of the transfer of control from CenturyTel were filed with the FCC, I received drafts of these filings. They showed that the transfer would be to Balaton, and not to ClearSky. As demonstrated in the email annexed hereto as Exhibit B, Kubbernus informed me that Balaton was listed as the transferee in these applications because Draco had not yet converted its loan to equity, and that when it did, an amendment would be filed with the FCC to reflect its interest.

6.     The FCC approved the transfer to Balaton on August 4, 2006. Draco's loan was reimbursed on September 15, 2006 and on the same date Draco invested an equivalent amount into equity in ClearSky. No amendment reflecting ClearSky's or Draco's interest was ever filed with the FCC, notwithstanding Kubbernus' promises to me.

7.     Wilson Vukelich negotiated the ClearSky limited partnership agreement on behalf of ClearSky with my counsel, and undoubtedly knew of ClearSky's and Draco's interests in SkyComm. Wilson Vukelich served as escrow agent for Draco's funds and facilitated the transfer of those funds from Draco to ClearSky to Balaton to SkyComm.

8.     Wilson Vukelich was intimately involved in every aspect of the SkyComm transaction, including the FCC filings listing the transferee as Balaton, and not ClearSky. Annexed hereto as Exhibit C are a series of emails showing Wilson Vukelich was kept informed by CenturyTel's FCC counsel, Latham & Watkins, every step along the way.

3

9.     Wilson Vukelich represented ClearSky at the September 15, 2006 closing where Draco acquired its interest in ClearSky. I now know that at the same time that Wilson Vukelich was providing me and the other ClearSky investors with documents showing that ClearSky would acquire as much as 82% of the equity in SkyComm, they were negotiating transactional documents which provided that this interest would go to Balaton instead. Had I known that they were doing this, I never would have invested in ClearSky, which had no other purpose than to own the controlling stake in SkyComm.

10.    Wilson Vukelich negotiated the SkyComm transaction documents and closed this transaction in Houston on November 2, 2006, not in the name of ClearSky, but in the name of Balaton. To my knowledge, Wilson Vukelich took no steps to represent the interests of its client, ClearSky, at the November 2, 2006 closing in Houston when title to the controlling interest in SkyComm was transferred to Balaton, and not ClearSky. To my knowledge, Wilson Vukelich never documented the beneficial ownership of the controlling interest in SkyComm for its client, ClearSky.

11.    I took Wilson Vukelich and Kubbernus at their word that Draco would be acquiring and did acquire a 40% interest in SkyComm, through its investment in ClearSky. This should have been reflected on SkyComm's books in Houston, but was not due to the fraudulent acts of Kubbernus and Wilson Vukelich.

12.    I now realize that Kubbernus and Wilson Vukelich defrauded me.    The explanation by Kubbernus that the FCC filings would reflect Balaton as the owner of the controlling interest because Draco had not yet converted its loan to equity was a false explanation; Balaton did not have any ownership interest in SkyComm at the time either so this explanation, with the benefit of hindsight, made no sense.

4

# EXHIBIT "A"

MAR. 31. 2006 11:43AM   WILSON VUKELICH LLP            NO. 8918   P. 1

**WILSON VUKELICH** LLP
BARRISTERS AND SOLICITORS
60 Columbia Way, Suite 710
Markham ON L3R 0C9 CANADA
www.wilsonvukelich.com

# Facsimile Cover Sheet

| To: | Company: | Fax No: | Tel No: |
|---|---|---|---|
| Robert Kubbernus c/o Lancaster Hotel | | 1-713.223.4528 | 1-713.228.9500 |

From:  Jeff Goldenthal/Linda          Tel No: 905-940-8744         Fax No: 905-940-8785
E-Mail: jgoldenthal@wilsonvukelich.com
Our File No: 49-1014          Date: March 31, 2006

We are sending 13 page(s) including this cover sheet

Originals to follow by mail:  ☐ Yes   ☒ No

Re:

---

Message:

Please deliver to Robert Kubbernus a guest of your hotel.

If you have any problems receiving this transmission, please call our Receptionist at (905) 940-8700.

This facsimile may contain information that is privileged or confidential and is therefore not to be delivered, discussed or disbursed to any party other than the designated recipient. Accordingly, if received in error, please contact the sender immediately.

Thank you for your co-operation.
**WILSON VUKELICH** LLP
Providing value-added legal services
Serving corporations, institutions and entrepreneurial, owner-operated businesses
Visit our website: www.wilsonvukelich.com

| | |
|---|---|
| General business law, including structuring, negotiating and documenting a broad range of corporate-commercial transactions and reorganizations | • Corporate/Commercial litigation |
| | • Employment Law |
| Computer and technology law | • Banking and Finance |
| Domestic and international taxation and estate planning | • Insolvency and Bankruptcy |
| Tax litigation | • Work outs and credit management |
| | • Commercial real estate |

K:\WP44\49-1014 - BALATON GROUP INC. - TAX STRUCTURE\FAXES\ROBERT KUBBERNUS.DOC

March 31, 2006

9037-9561 Quebec Inc.
345 Woodica Avenue,
Mount Royal, Quebec H3P 1R4

Attention:  Adrien Pouliot

The undersigned, Clear Sky Investments, L.P. ("Borrower"), refers to the letter loan agreement dated March 31, 2006 (as modified from time to time, (the "Loan Agreement"), between the Borrower and 9037-9561 Quebec Inc. (the "Lender"), and hereby gives written notice to Lender, pursuant to Section 6 of the Loan Agreement, that the undersigned hereby requests a loan from the Lender (the "Requested Loan") on the following terms:

Amount of Requested Loan $750,000.00 United States Dollars

Date of Requested Loan:  March 31, 2006

Please wire the proceeds of the Requested Loan to the trust account of our solicitors Wilson Vukelich LLP in accordance with the attached wire instructions.

Also attached hereto is an executed copy of a Borrowing Request under the DIP Credit Agreement (as each such term is defined in the Loan Agreement).  The undersigned hereby confirms that such Borrowing Request is in accordance with the DIP Credit Agreement.

Very truly yours,

CLEAR SKY INVESTMENTS, L.P.
BY ITS GENERAL PARTNER
CLEAR SKY MANAGEMENT, INC.

By:
Name:  Robert Kubbernus
Title:  President

MAR. 31. 2008 11:44AM    WILSON VUKELICH LLP          NO. 8918   P. 3

## Wire Transfer Instructions
### (For funds being transferred to Wilson Vukelich)

**Bank:**  Canadian Imperial Bank of Commerce

**Swift Code:**  ▮▮▮▮▮▮

(to be used if funds are transferred from outside Canada)

**Transit No.:**  ▮▮42

**Address:**  300 West Beaver Creek Road

Richmond Hill  Ontario Canada  L4B 5B1

**Attention:**  WARREN ABBOTT  OR  RACHEL

**Account No.:**  ▮▮▮▮▮

**Account Holder Name:**  Wilson Vukelich LLP in trust

*US Account

Please forward name of sender and amount of funds transferred when you have verification that funds have been sent.

Document2



March 29, 2006

Balaton Group Inc.
152 King Street East
Toronto, Ontario, M5A 1J3
Facsimile: (416) 366-8273
   Attn: Robert Kubbernus

Ladies and Gentlemen:

The undersigned, SkyPort International, a Texas corporation ("Borrower"), refers to the DIP Credit Agreement dated as of February 15, 2006 (as modified from time to time, the "DIP Agreement"), between SkyPort and Balaton Group Inc. (the "Lender"), and hereby gives written notice to Lender, pursuant to Section 2(c) of the DIP Agreement, that the undersigned hereby requests a Loan from the Lender (the "Requested Loan") on the following terms:

Amount of Requested Loan:  $750,000.00

Date of Requested Loan:   March 30, 2006

As required by Section 2(c) of the DIP Agreement, Borrower intends to use the proceeds from the Requested Loan as provided in the Approved Budget of the Borrower, a copy of which is attached as Exhibit A.

Very truly yours,

SKYPORT INTERNATIONAL, INC.

By: _____
Name: Roger L. Klotz
Title: President & Chief Executive Officer

JHOUSTON\1044765.1

(e)  **Governing Law**
This agreement shall be construed in accordance with and governed by the laws of the Province of Ontario and of Canada applicable therein.

(f)  **Whole Agreement**
This agreement, the Security and any other written agreement delivered pursuant to or referred to in this agreement constitute the whole and entire agreement between the parties in respect of the Credit Facility.  There are no verbal agreements, undertakings or representations in connection with the Credit Facility.

(g)  **Joint and Several**
Where more than one Person is liable as Borrower for any obligation under this agreement, then the liability of each such Person for such obligation is joint and several with each other such Person.

(h)  **Time**
Time shall be of the essence in all provisions of this agreement.

(i)  **Acceptance**
This offer is open for acceptance until March 31, 2006, after which date it will be null and void, unless extended in writing by the Lender.

Please confirm your acceptance of this agreement by signing the attached copy of this letter in the space provided below and returning it to the undersigned.

**9037-9561 QUEBEC INC.**

By:_____
Name:
Title:

We acknowledge and accept the foregoing terms and conditions
as of March 31, 2006

**CLEAR SKY INVESTMENTS, L.P.**
**BY ITS GENERAL PARTNER**
**CLEAR SKY MANAGEMENT, INC.**

By:_____
Name:  Robert Gubbernus
Title:  President

- 10 -

BALATON GROUP, INC.

By: _____
Name: Robert Kuzserenus
Title: President

THE WATERSHED FUNDS, LTD.

By: _____
Name: Robert Kuzserenus
Title: President

CLEAR SKY MANAGEMENT, INC.

By: _____
Name: Robert Kuzserenus
Title: President

- 11 -

powers, authorities and discretions hereby conferred upon the Lender, and the Borrower and each Guarantor shall, from time to time after any such default, do all such acts and things and execute and deliver all such deeds, transfers, assignments and instruments as the Lender may require for facilitating the sale of the Charged Premises in connection with any realization thereof.

**Section 16.**   **Successors and Assigns.** This Assignment shall be binding upon the Borrower, its successors and assigns, and shall enure to the benefit of the Lender and its successors and assigns.

**Section 17.**   **Governing Law.** This Assignment shall be governed by and construed in accordance with the laws of the Province of Ontario and of Canada applicable therein and shall be treated in all respects as an Ontario contract.

**Section 18.**   **Discharge.** The security created hereby shall be released and discharged upon, but only upon, full payment of the Obligations and at the request and expense of the Borrower.

**Section 19.**   **Conflict.** To the extent that any term, condition, representation, covenant or other provision contained in this Assignment is at any time inconsistent with any term, condition, representation, covenant or other provision contained in the Credit Agreement, the relevant term, condition, representation, covenant or other provision of the Credit Agreement shall govern.

**IN WITNESS WHEREOF** the Assignor has caused this Assignment to be executed as of the day set forth above.

CLEAR SKY INVESTMENTS, L.P. by its general partner CLEAR SKY MANAGEMENT, INC.

By: _____
Name: Robert Kubbernus
Title: President

I have authority to bind the Corporation.

BALATON GROUP INC.

By: _____
Name: Robert Kubbernus
Title: President

I have authority to bind the Corporation.

THE WATERSHED FUNDS, LTD

By:
Name: Robert Kubbernus
Title: President

I have authority to bind the Corporation.

CLEAR SKY MANAGEMENT, INC.

By
Name: Robert Kubbernus
Title: President

I have authority to bind the Corporation.

– 6 –

enforced or (ii) in respect of any particular right or obligation to which such provision would otherwise be applicable, shall be ineffective to the extent such provision is or is deemed to be void, prohibited or unenforceable without in any way invalidating the remaining provisions of this Agreement. In addition, any provision which is or is deemed to be void, prohibited or unenforceable in any jurisdiction, or in respect of any particular right or obligation, shall not invalidate or render unenforceable such provision in any other jurisdiction or in respect of any other rights or obligations to which such provision is applicable.

**Section 19. Governing Law; Attornment.** This Agreement shall be governed by the internal laws (as opposed to the conflicts of law provisions) of the Province of Ontario, and the Pledgor attorns to the non-exclusive jurisdiction of the courts in such Province.

IN WITNESS WHEREOF, the Pledgor and the Pledgee have each caused this Agreement to be duly executed and delivered as of the date first set out above.

BALATON GROUP INC.

By:

Name: Robert Kubbernus

Title: President

9037-9561 QUEBEC INC.

By:

Name:

Title:

14

28. **Acknowledgement of Receipt Waiver.** The Borrower acknowledges receipt of an executed copy of this Agreement and, to the extent permitted by applicable law, waives the right to receive a copy of any financing statement, financing change statement or verification statement in respect of any registered financing statement or financing change statement prepared, registered or issued in connection with this Agreement.

29. **Severability.** Any provision of this Agreement that is invalid or unenforceable in any jurisdiction will, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability and will be severed from the balance of this Agreement, all without affecting the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

DATED the 31ˢᵗ day of March, 2006.

CLEAR SKY INVESTMENTS, L.P.  by its general
partner CLEAR SKY MANAGEMENT, INC.

By
Name: Randy Kubik
Title: President

8

unconscionable, or unenforceable, all other terms and provisions hereof shall nevertheless remain effective and shall be enforced to the fullest extent permitted by law.

27.    **Communication.** All communications provided for or permitted hereunder shall be in writing, personally delivered to an officer or other responsible employee of the addressee or sent by registered mail, charges prepaid, or by telecopy, to the address set forth on the execution pages of this Guarantee or to such other address as the recipient may from time to time designate to the other in such manner. Any communication so personally delivered shall be deemed to have been validly and effectively given on the date of such delivery. Communications so sent by telecopy shall be deemed to have been validly and effectively given on the business day next following the day on which it is sent. Communications so sent by mail shall be deemed to have been validly and effectively given on the fifth business day next following the day on which it is sent.

28.    **Miscellaneous.** Any reference in this Guarantee to a "person" shall be deemed to include an individual, corporation, partnership, trust, unincorporated organization, government and the heirs, executors, administrators or other legal representatives of an individual.

DATED: as of March 31, 2006

Address of Guarantor:                          BALATON GROUP INC.

Attention: Robert Kubbernus                   By:
152 King Street East                          Name: Robert Kubbernus
Toronto  ON  M5A 1J3                           Title:  President

Fax: [       ]

Address of Lender:

9037-9561 Quebec Inc
345 Woodlea Avenue,
Mount Royal,
Quebec, H3P 1R4
Attention: A. Pouliot

Fax: [       ]

8

unconscionable, or unenforceable, all other terms and provisions hereof shall nevertheless remain effective and shall be enforced to the fullest extent permitted by law.

27.    **Communication.** All communications provided for or permitted hereunder shall be in writing, personally delivered to an officer or other responsible employee of the addressee or sent by registered mail, charges prepaid, or by telecopy, to the address set forth on the execution pages of this Guarantee or to such other address as the recipient may from time to time designate to the other in such manner. Any communication so personally delivered shall be deemed to have been validly and effectively given on the date of such delivery. Communications so sent by telecopy shall be deemed to have been validly and effectively given on the business day next following the day on which it is sent. Communications so sent by mail shall be deemed to have been validly and effectively given on the fifth business day next following the day on which it is sent.

28. __ **Miscellaneous.** Any reference in this Guarantee to a "person" shall be deemed to include an individual, corporation, partnership, trust, unincorporated organization, government and the heirs, executors, administrators or other legal representatives of an individual.

DATED: as of March 31, 2006

Address of Guarantor:

152 King Street East
Toronto ON M5A 1J3
Attention: Robert Kubbernus
Fax: [       ]

Address of Lender:
9037-9561 Quebec Inc
345 Woodlea Avenue,
Mount Royal,
Quebec, H3P 1R4
Attention: A. Pouliot

Fax: [    ]

THE WATERSHED FUNDS, LTD.

By:
Name: Robert Kubbernus
Title: President

8

Guarantee. Unless otherwise defined herein, all initially capitalized terms herein shall have the meanings ascribed thereto in the Credit Agreement.

26.    Severability. If any provision of this Guarantee shall be determined to be illegal, unconscionable, or unenforceable, all other terms and provisions hereof shall nevertheless remain effective and shall be enforced to the fullest extent permitted by law.

27.    Communication. All communications provided for or permitted hereunder shall be in writing, personally delivered to an officer or other responsible employee of the addressee or sent by registered mail, charges prepaid, or by telecopy, to the address set forth on the execution pages of this Guarantee or to such other address as the recipient may from time to time designate to the other in such manner. Any communication so personally delivered shall be deemed to have been validly and effectively given on the date of such delivery. Communications so sent by telecopy shall be deemed to have been validly and effectively given on the business day next following the day on which it is sent. Communications so sent by mail shall be deemed to have been validly and effectively given on the fifth business day next following the day on which it is sent.

28.    Miscellaneous. Any reference in this Guarantee to a "person" shall be deemed to include an individual, corporation, partnership, trust, unincorporated organization, government and the heirs, executors, administrators or other legal representatives of an individual.

        DATED: as of March 31, 2006

Address of Guarantor:                    CLEARSKY MANAGEMENT, INC.?

Attention: Robert Kubbernus            By:
152 King Street East                   Name: Robert Kubbernus
Toronto ON M5A 1J3                     Title: President

Fax: [    ]

Address of Lender
9037-9561 Quebec Inc
345 Woodlea Avenue,
Mount Royal,
Quebec, H3P 1R4
Attention: A. Pouliot
Fax: [    ]

E:\WF\4P\8-1010 - Belstos Group Inc\Documents\Guarantee - Clark.sky5.doc

13.    Kubbernus could not have pulled off his fraud which cost ClearSky Investors over

$7 million and Draco over $3.5 million, without the active collaboration and support of Wilson

Vukelich.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June /6, 2010.

Adrien Pouliot

5

# EXHIBIT "B"

**Anna Alaverdian**

| | |
|---|---|
| **From:** | Samuel Goldman [sg@sgalaw.com] |
| **Sent:** | Wednesday, June 16, 2010 11:40 AM |
| **To:** | Anna Alaverdian |
| **Subject:** | Fwd: FCC transfer of control |

Subject:
FW: Draft FCC filings - transfer to Balaton
From:
"Robert Kubbernus" <robert@balatongroupinc.com>
Date:
Sat, 1 Apr 2006 08:03:36 -0400
To:
"Adrien Pouliot" <apouliot@videotron.ca>

To:
"Adrien Pouliot" <apouliot@videotron.ca>
CC:
"LisaRob" <robert.mendel@videotron.ca>


Good morning Adrien. I have not reviewed these docs but will over the weekend. You are receiving them as when I do. This is the FCC application for change of control (Long Form) Submission is planned for Monday. We are to report any holders of shares greater then 10%. Until we convert you to equity we will continue to show Balaton as the shareholder. I believe our assignments to you cover you regardless. We will amend our application at the appropriate time.

------------------------------------------------------------------------

*From:* Bart.Wheeler@lw.com [mailto:Bart.Wheeler@lw.com]
*Sent:* March 31, 2006 3:00 PM
*To:* Robert Kubbernus; Paul Heney; Brogan Taylor
*Cc:* Jeffrey.Marks@LW.com
*Subject:* Draft FCC filings - transfer to Balaton


Please find attached the draft FCC filings seeking consent for transfer of control of SkyPort to Balaton. These are currently being reviewed by CenturyTel and SkyPort as well. Our goal is to file these on Monday if possible. Please let us know any comments you may have and whether they meet with your approval.

Please note that the address information (city, state, and zip code) for Balaton is showing up on the form incorrectly due to the mechanics of the online form. This will be fixed before filing.

Thanks very much for your assistance.

Regards,

Bart

<<312 - Balaton Transfer - VSAT.pdf>> <<214 - Balaton Transfer.pdf>> <<312 - Balaton Transfer - Earth Station.pdf>>

*Bart Wheeler**

*LATHAM^ **^& ** WATKINS^ **^LLP *
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Direct Tel:  (202) 637-1053
Fax:  (202) 637-2201
E-mail:  bart.wheeler@lw.com
www.lw.com <file:///%5C%5Cwww.lw.com>

*NY application pending; not yet licensed in DC

**********************************************************************************
To comply with IRS regulations, we advise you that any discussion of Federal tax issues in this e-mail was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to http://www.lw.com/resource/Publications/_pdf/pub1289_1.pdf
**********************************************************************************

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

# EXHIBIT "C"

## Samuel Goldman

**From:** Robert Kubbernus [robert@balatongroupinc.com]
**Sent:** Friday, April 28, 2006 1:37 PM
**To:** apouliot@videotron.ca
**Subject:** FW: SkyPort FCC Update
**Attachments:** p042806e.pdf

FYI from the FCC attorneys.

Best regards,

Robert Kubbernus
BALATON GROUP INC.
PH:    416.366.4556
FX:    416.366.8273
MOB:  416.564.2987
Email:  robert@balatongroupinc.com

This message may contain confidential or proprietary information and is intended only for the use of the addressee named above.
No confidentiality or privilege is waived or lost by any error in transmission. If you are not the intended recipient of this message you
are hereby notified that you must not use, disseminate, copy it in any form or take any action in reliance on it.

**From:** Jeffrey.Marks@LW.com [mailto:Jeffrey.Marks@LW.com]
**Sent:** April 28, 2006 12:26 PM
**To:** clarence.marshall@CenturyTel.com; Trey.Wood@bracewellgiuliani.com; Paul Heney;
JGoldenthal@WilsonVukelich.com; Margaret.Symonds@bracewellgiuliani.com; roger.klotz@skyportsecure.com;
tom.orem@skyportsecure.com; stewart.ewing@CenturyTel.com; Robert Kubbernus;
Stephanie.Rosenberg@bracewellgiuliani.com; knajder@joneswalker.com
**Cc:** Toni.Silva@bracewellgiuliani.com; KAREN.BRINKMANN@LW.com; Bart.Wheeler@lw.com
**Subject:** RE: SkyPort FCC Update

As anticipated, the International 214 application was placed on Public Notice today as accepted for filing for streamlined
treatment (the Public Notice is attached). Parties have until May 12, 2006 to comment. If the FCC does not pull the
application from streamlined processing by May 12, the application will be "deemed granted" (that is, unlike the earth
station/VSAT applications, no FCC action is required for grant of the International 214 application). Also note that the
earth station/VSAT applications are on a slower track overall than the International 214 application, with the public notice
period for those applications not expiring until May 19, 2006, followed by the need for affirmative action by the FCC to
grant.

Please note that, where substantial foreign ownership is involved, it is VERY common for the FCC to take International
214 applications off streamlined treatment and delay grant. There isn't a guarantee that the application will be pulled from
streamlining, but I wanted to make clear that we are not yet out of the woods with regard to possible delay. We'll continue
to monitor the situation so as to deal with any issues that arise as quickly as possible.

Best regards,

Jeff

**From:** Marks, Jeffrey (DC)
**Sent:** Thursday, April 20, 2006 10:04 AM
**To:** 'Clarence Marshall'; 'Wood, Trey'; 'Paul Heney'; 'Jeff Goldenthal'; 'Symonds, Margaret';
'roger.klotz@skyportsecure.com'; 'tom.orem@skyportsecure.com'; 'Stewart Ewing'; 'Robert Kubbernus'; 'Rosenberg,
Stephanie'; 'Najder, Ken'
**Cc:** 'Silva, Toni'; Brinkmann, Karen (DC); Wheeler, Bart (DC)
**Subject:** RE: SkyPort FCC Update

1

Good news! SkyPort's two FCC earth station applications hit Public Notice yesterday (see last page of the attached). The Public Notice starts a 30-day clock for public comment (expiring on May 19, 2006) and represents the *minimum* amount of time the FCC must wait before issuing an order. There routinely is a couple-week lag between expiration of the notice period and grant, assuming no opposition from the government (most likely related to national security) or from the public. Opposition, of course, could lead to varying degrees of delay depending on the concerns that are raised.

Please note that there is a third application pending as well, the International 214 application. We have been informed that this application likely will be placed on public notice next week as the person who is processing the application has just returned from being out sick for several days. Once on Public Notice, the International 214 application has only a 14-day waiting period, assuming streamlined treatment, at which time the application will be "deemed granted" with no need for a further order. Due to foreign ownership issues, however, it is highly likely in today's climate that the application will be taken off streamlining, which usually occurs during the 14-day period. Similar to the earth station applications, if the government raises concerns, it will likely lead to at least some delay depending on the concerns that are raised.

We'll keep you posted.

--Jeff

---

**From:** Marks, Jeffrey (DC)
**Sent:** Friday, April 14, 2006 10:22 AM
**To:** 'Clarence Marshall'; 'Wood, Trey'; 'Paul Heney'; 'Jeff Goldenthal'; 'Symonds, Margaret'; 'roger.klotz@skyportsecure.com'; 'tom.orem@skyportsecure.com'; 'Stewart Ewing'; 'Robert Kubbernus'; 'Rosenberg, Stephanie'; 'Najder, Ken'
**Cc:** 'Silva, Toni'; Wheeler, Bart (DC)
**Subject:** RE: SkyPort FCC Update

After filing our FCC applications last week, FCC staff has provided very little feedback to us. The next step is for the FCC to put the applications on Public Notice starting the public comment period. We'll keep trying to get information, but likely won't know anything until at least the middle of next week. As a side note, it appears that the national security review process has heated up quite a bit and that deals that normally would skate through are now much more likely to be delayed. I have not heard anything in particular about our transaction, but wanted to give you a heads up on this trend.

Best regards, .

**Jeffrey A. Marks**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Direct Dial: (202) 637-2120
Fax: (202) 637-2201
Email: jeffrey.marks@lw.com
www.lw.com

**********************************************************************
To comply with IRS regulations, we advise you that any discussion of Federal tax issues in this e-mail was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to http://www.lw.com/resource/Publications/_pdf/pub1289_1.pdf
**********************************************************************

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP



# PUBLIC NOTICE

**FEDERAL COMMUNICATIONS COMMISSION**
445 12th STREET S.W.
WASHINGTON D.C. 20554

News media information 202-418-0500
Fax-On-Demand 202-418-2830; Internet: http://www.fcc.gov (or ftp.fcc.gov)
TTY (202) 418-2555

**Report No.   TEL-01021S**                    **Friday  April 28, 2006**

### STREAMLINED INTERNATIONAL APPLICATIONS ACCEPTED FOR FILING

### SECTION 214 APPLICATIONS (47 C.F.R. § 63.18); SECTION 310(B)(4) REQUESTS

Unless otherwise specified, the following procedures apply to the applications listed below:

The international Section 214 applications listed below have been found, upon initial review, to be acceptable for filing and subject to the streamlined processing procedures set forth in Section 63.12 of the Commission's rules, 47 C.F.R. § 63.12. These applications are for authority under Section 214 of the Communications Act, 47 U.S.C. § 214, (a) to transfer control of an authorized carrier or to assign a carrier's existing authorization; and/or (b) to become a facilities-based international common carrier; and/or (c) to become a resale-based international common carrier.

Pursuant to Section 63.12 of the rules, these Section 214 applications will be granted 14 days after the date of this public notice (see 47 C.F.R. § 1.4 regarding computation of time), and the applicant may commence operations on the 15th day, unless the Commission has informed the applicant in writing, within 14 days after the date of this public notice, that the application, on further examination, has been deemed ineligible for streamlined processing.

Communications between outside parties and Commission staff concerning these applications are permitted subject to the Commission's rules for "permit-but-disclose proceedings." See 47 C.F.R. § 1.1206. An application can be removed from streamlined processing only in the sound discretion of Commission staff. The filing of comments or a petition to deny will not necessarily result in an application being deemed ineligible for streamlined processing.

The petitions for declaratory ruling listed below are for authority under Section 310(b)(4) of the Communications Act, 47 U.S.C. § 310(b)(4), to exceed the 25 percent foreign ownership benchmark applicable to common carrier radio licensees. The requested rulings will be granted 14 days after the date of this public notice, effective the next day, unless the application is formally opposed or the Commission has informed the applicant in writing, within 14 days of the date of this public notice, that the application, on further examination, has been deemed ineligible for streamlined processing. For this purpose, a formal opposition shall be sufficient only if it is received by the Commission and by the applicant within 14 days of the date of this public notice and its caption and text make it unmistakably clear that it is intended to be a formal opposition.

Copies of all applications listed here are available for public inspection in the FCC Office of Public Affairs Reference and Information Center, located in room CY-A257 at the Portals 2 building, 445 12th Street SW, Washington DC 20554. The center can be contacted at (202) 418-0270. People with Disabilities: To request materials in accessible formats for people with disabilities (braille, large print, electronic files, audio format), send an e-mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau at 202-418-0530 (voice), 202-418-0432 (tty). All applications listed are subject to further consideration and review, and may be returned and/or dismissed if not found to be in accordance with the Commission's rules, regulations, and other requirements.

We request that comments on any of these applications refer to the application file number shown below.

---

**ITC-214-20060413-00241**   E            THRANE & THRANE AIRTIME LTD.

International Telecommunications Certificate

**Service(s):**      Global or Limited Global Facilities-Based Service, Global or Limited Global Resale Service

Application for authority to provide facilities-based service in accordance with Section 63.18(e)(1) of the rules, and also to provide service in accordance with Section 63.18(e)(2) of the rules.

---

**ITC-214-20060420-00253**   E            Alpha Telecom, Inc

International Telecommunications Certificate

**Service(s):**      Global or Limited Global Facilities-Based Service, Global or Limited Global Resale Service

Application for authority to provide facilities-based service in accordance with Section 63.18(e)(1) of the rules, and also to provide service in accordance with Section 63.18(e)(2) of the rules.

---

**ITC-214-20060427-00257**   E            TeleCommunication Systems Corporation of Maryland

International Telecommunications Certificate

**Service(s):**      Global or Limited Global Facilities-Based Service, Global or Limited Global Resale Service

Application for authority to provide facilities-based service in accordance with Section 63.18(e)(1) of the rules, and also to provide service in accordance with Section 63.18(e)(2) of the rules.

---

**ITC-ASG-20060411-00239**   E            West Kentucky Networks, Inc.

Assignment

**Current Licensee:**   Yorkville Communications, Inc.

**FROM:**  Yorkville Communicaitons, Inc.

**TO:**      West Kentucky Networks, Inc.

Application for consent to assign international section 214 authorization, ITC-214-20000110-00009, held by Yorkville Communications, Inc. ("YCI"), a wholly-owned subsidiary of Yorkville Telephone Cooperative, Inc. ("YTC"), to West Kentucky Networks, Inc. d/b/a wk.net ("WKN"), a wholly-owned subsidiary of West Kentucky Rural Telephone Cooperative Corporation, Inc. ("WKT"), a Kentucky cooperative organization. Pursuant to an asset purchase agreement, WKN will purchase YCI's operating assets, including its international section 214 authorization. Upon consummation, WKN will provide services to YCI's customers pursuant to its own international section 214 authorization, ITC-214-19981123-00814, and it anticipates surrendering YCI's current section 214 authorization at some point after finalization of the transaction process. No single member of WKT holds, or will hold upon consummation, a direct or indirect ownership interest in WKT of ten percent or more.

---

**ITC-ASG-20060421-00255**   E            WWC License L.L.C.

Assignment

**Current Licensee:**   Amarillo CellTelCo d/b/a Cellular One of Amarillo

**FROM:**  Amarillo CellTelCo d/b/a Cellular One of Amarillo

**TO:**      WWC License L.L.C.

Application for consent to assign international section 214 authorization, ITC-214-19960826-00403, held by Amarillo CellTelCo d/b/a Cellular One of Amarillo (Amarillo) to WWC License L.L.C. (WWC). Pursuant to an Asset Purchase Agreement, dated April 17, 2006, WWC will purchase Amarillo's licenses and associated assets, including its international section 214 authorization. WWC is a direct, wholly-owned subsidiary of WWC License Holding L.L.C., which, in turn, is indirectly, wholly owned by ALLTEL Corporation. ALLTEL Corporation is a publicly-traded corporation in which no single shareholder holds 10 percent or more shares.

---

---

ITC-T/C-20060130-00076    E          Wavecrest Communications LLC

Transfer of Control

**Current Licensee:** Wavecrest Communications LLC

**FROM:** Wavecrest Communications LLC

**TO:** Marr T&T Limited

Application for consent to transfer control of international section 214 authorization, ITC-214-20020214-00056, held by WaveCrest Communications LLC ("WaveCrest"), a U.S. corporation, from its former shareholders to Marr T&T Limited (Marr T&T), a British Virgin Islands company. Marr T&T's sole shareholder is Marr Group Holdings Limited, a Mauritius company that is controlled by Mr. Marat Safin, a U.K. citizen. The transaction for which consent is being sought took place on May 7, 2002, when Marr T&T acquired 63.99 percent ownership interest in WaveCrest Communications Limited (formerly, WaveCrest Communications plc), which subsequently assigned its section 214 authorization on a pro forma basis to WaveCrest as part of an internal corporate restructuring in May 2003. Since that time, Marr T&T has held its controlling interest in WaveCrest indirectly through WaveCrest Group Enterprises Limited ("WaveCrest Group"), a British Virgin Islands corporation, and its wholly-owned subsidiary WaveCrest (UK) Limited, a U.K. corporation. The remaining 36.1 percent ownership interests in WaveCrest Group are held by original shareholders of WaveCrest.

---

ITC-T/C-20060407-00244    E          Skyport International, Inc.

Transfer of Control

**Current Licensee:** SkyPort International, Inc.

**FROM:** CenturyTel, Inc.

**TO:** Balaton Group, Inc.

Application for consent to transfer control of international section 214 authorization, ITC-214-19990211-00083, held by SkyPort International, Inc. ("SkyPort"), to Balaton Group Inc. ("Balaton"), a private equity firm that is organized under the laws of Canada. CenturyTel, Inc. ("CenturyTel") currently controls approximately 65 percent of the voting interests in SkyComm Technologies Corporation ("SkyComm"), which wholly owns SkyPort. Balaton will acquire approximately 84 percent of the issued and outstanding stock of SkyComm. Balaton is wholly owned by five Canadian citizens. The remaining 16 percent of SkyComm will be owned by SkyComm's existing shareholders, all of whom will hold interests of less than 5 percent.

---

ITC-T/C-20060417-00236    E          Virginia Cellular LLC dba Cellular One

Transfer of Control

**Current Licensee:** Virginia Cellular LLC dba Cellular One

**FROM:** Virginia Cellular, Inc.

**TO:** WWC License L.L.C.

Application for consent to transfer control of international section 214 authorization, ITC-214-20060314-00153, held by Virginia Cellular LLC d/b/a/ Cellular One, from its parent Virginia Cellular, Inc., to WWC License L.L.C. ("WWC"), a Delaware limited liability company. Pursuant to a purchase agreement dated March 24, 2006, WWC will purchase all outstanding membership interests in Virginia Cellular LLC and, consequently, Virginia Cellular LLC will become a wholly-owned subsidiary of WWC. WWC is a direct, wholly-owned subsidiary of WWC License Holding L.L.C., which, in turn, is indirectly, wholly owned by ALLTEL Corporation. ALLTEL Corporation is a publicly-traded corporation in which no single shareholder holds 10 percent or more shares.

---

ITC-T/C-20060417-00237    E          ICG Telecom Group, Inc.

Transfer of Control

**Current Licensee:** ICG Telecom Group, Inc.

**FROM:** ICG Communications, Inc.

**TO:** Level 3 Communications, LLC

Application for consent to transfer control of international section 214 authorization, ITC-214-19980508-00305, held by ICG Telecom Group, Inc. (ICG Telecom), a wholly held subsidiary of ICG Communications, Inc. (ICG), to Level 3 Communications, LLC (Level 3). Pursuant to a Stock Purchase Agreement entered into on April 14, 2006, between Level 3 and ICG's parent MCCC ICG Holdings, LLC (MCCC ICG) Level 3 will acquire all of the stock of ICG. Upon consummation, ICG will become a direct wholly owned subsidiary, and in turn, ICG Telecom will become an indirect wholly owned subsidiary, of Level 3. ICG Telecom will continue to operate and provide international resale and facilities-based international services pursuant to its international section 214 authorization, under the ICG brand name. Level 3 Financing, Inc., holds 100% equity and voting interest in Level 3 and is, in turn, 100% owned by Level 3 Communications, Inc., in which Southeastern Asset Management, Inc. (SAM) holds sole or shared voting rights for approximately 18% of outstanding shares.

---

**INFORMATIVE**

ITC-214-20060404-00180          BT Fifty-Three Limited

---

**INFORMATIVE**

This application has been removed from Streamlined processing pursuant to Section 63.12(c)(4) of the Commission's rules.

**ITC-214-20060405-00188**                    AllAccess, Inc.

This application has been removed from Streamlined processing pursuant to Section 63.12(c)(4) of the Commission's rules.

**ITC-214-20060405-00189**                    International Communication Services, Inc.

This application has been removed from Streamlined processing pursuant to Section 63.12(c)(4) of the Commission's rules.

REMINDERS:

Applicants must certify that neither the applicant nor any party to the application is subject to a denial of federal benefits by federal and/or state courts under authority granted in 21 U.S.C. § 862. See 47 C.F.R. §§ 1.2001-.2003.

A current version of Section 63.09-.24 of the rules, and other related sections, is available at http://www.fcc.gov/ib/pd/pf/telecomrules.html.

**Samuel Goldman**

| | |
|---|---|
| **From:** | Robert Kubbernus [robert@balatongroupinc.com] |
| **Sent:** | Wednesday, April 05, 2006 3:34 AM |
| **To:** | Adrien Pouliot |
| **Subject:** | FW: SkyPort filings made |

See below.  FCC filing was made yesterday.

---

**From:** Bart.Wheeler@lw.com [mailto:Bart.Wheeler@lw.com]
**Sent:** April 4, 2006 7:42 PM
**To:** clarence.marshall@CenturyTel.com; stewart.ewing@CenturyTel.com; stacey.goff@CenturyTel.com; john.jones@CenturyTel.com; Trey.Wood@bracewellgiuliani.com; Paul Heney; JGoldenthal@WilsonVukelich.com; Margaret.Symonds@bracewellgiuliani.com; roger.klotz@skyportsecure.com; tom.orem@skyportsecure.com; Robert Kubbernus; Stephanie.Rosenberg@bracewellgiuliani.com; knajder@joneswalker.com; Brogan Taylor
**Cc:** Toni.Silva@bracewellgiuliani.com; Jeffrey.Marks@LW.com; KAREN.BRINKMANN@LW.com
**Subject:** SkyPort filings made

We have filed the three FCC applications relating to the transfer of SkyPort to Balaton, and we will continue to keep you updated as things progress.

Best regards,

Bart

**Bart Wheeler\***

**LATHAM & WATKINS** LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Direct Tel:  (202) 637-1053
Fax:  (202) 637-2201
E-mail:  bart.wheeler@lw.com
www.lw.com

\*NY application pending; not yet licensed in DC

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
To comply with IRS regulations, we advise you that any discussion of Federal tax issues in this e-mail was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to http://www.lw.com/resource/Publications/_pdf/pub1289_1.pdf
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP