IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SKYPORT GLOBAL | § | CASE NO. 08-36737-H4-11 |
| COMMUNICATIONS, INC., | § | (Chapter 11) |
|    Debtor | § | |
| JOANNE SCHERMERHORN, JOHN K. | § | |
| WAYMIRE, ET AL., | § | |
|    PLAINTIFFS | § | |
| | § | |
| VS. | § | ADVERSARY NO. 10-3150 |
| | § | |
| CENTURYTEL, INC. (A/K/A CENTURY LINK), | § | |
| CLARENCE MARSHALL, ET AL., | § | |
|    DEFENDANTS | § | |

## DEFENDANTS' MOTION FOR ADDITIONAL SANCTIONS

*******************************************************************************

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

*******************************************************************************

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

      The non-Wilson Vukelich Defendants[1] ("Defendants") hereby move this Court, pursuant to Bankruptcy Rule 9020, its inherent powers, and 11 U.S.C. § 105 for an award of additional

---

[1] CenturyTel, Inc. (a/k/a CenturyLink), Clarence Marshall, R. Stewart Ewing, Jr., Michael E. Maslowski, Harvey P. Perry, and Robert Kubbernus, Balaton Group, Inc., Bankton Financial Corporation, Bankton Financial Corporation, LLC, ClearSky Management, Inc., and ClearSky Investments, LP.

sanctions against Plaintiffs of $75,000 for an appeal to the District Court, $75,000 for an appeal to the Circuit Court, and $250,000 in the event of an appeal to the United States Supreme Court. Also, they ask for coercive sanctions of $350 per diem for each day that the sanctions remain unpaid and the sanctions order remains un-stayed, with the right to seek additional coercive measures in the future.  The grounds for this Motion are as follows:

### SUMMARY OF DISPUTE

1. On May 27, 2010, the Court orally granted Defendants' Motion for Sanctions[2] against Plaintiffs for filing a complaint that violated the Court's Confirmation Order.  As a violation of a court order, the Plaintiffs' actions can be punished as civil contempt.  Under Bankruptcy Rule 9020, the Court has conducted an evidentiary hearing on the contempt and found the Plaintiffs had knowingly violated this Court's Confirmation Order—by disingenuously re-labeling a suit on enjoined actions.  As the minimum sanction necessary to remedy the contempt, the Court awarded reasonable attorneys' fees and expenses incurred prosecuting the Motion for Sanctions.  The Court authorized the Defendants to seek other sanctions by this motion.

2. The Court found that Plaintiffs knew about the bankruptcy case, chose not to participate in the bankruptcy process, and then post-confirmation filed a suit knowing that it violates the Plan and Confirmation Order.[3]  Plaintiffs' Complaint was "either very deceitfully drafted or very disingenuously drafted, maybe both."[4]

---

[2] Defendants' Motion to Dismiss, or, Alternatively, for Summary Judgment, and for Sanctions [Docket No. 2].

[3] May 27 2010, Transcript, Various Motion Hearing, at p. 273, line 18 to p. 274, line 5.  Capitalized terms have the meaning ascribed to them in the Motion for Sanctions.

[4] May 27 2010, Transcript, Various Motion Hearing, at p. 271, lines 3-4.

3. Plaintiffs still assert that their Complaint was drafted such that it contains no claims barred by the Confirmation Order or discharge injunction. Unbelievably, at the hearing Plaintiffs refused to concede that even <u>one</u> of the allegations in the Complaint could violate the Confirmation Order or be a derivative claim owned by the Reorganized Debtor. They argued, "Your Honor, with a straight face I will tell you that these are all direct claims. I will say that until I'm blue in the face."[5]

4. The Court, however, stated that it is, "bothered by the fact that I'm seeing a pleading that is thumbing its nose at my findings of fact and conclusions of law, and at the plan provisions that I confirmed. That ain't right."[6] "To tell [the Court] that this pleading before [it] doesn't seek relief against SkyPort, doesn't seek to appoint a Trustee in SkyPort, is an incredible argument that has <u>absolutely no merit</u>."[7] "I am very candidly put out with having my confirmation order violated to the extent it has been. And it shouldn't have been filed -- <u>that complaint shouldn't have been filed</u>."[8]

5. In the context of its ruling, the Court also found that Plaintiffs attempted to game the system and willfully violated the Confirmation Order with the intent of evading its injunction, imposing liability on the Debtor and enjoined insiders, and also to assert control over derivative claims owned by the Reorganized Debtor.

6. At the Court's instruction, on June 11, 2010, Defendants forwarded to Plaintiffs Defendants' invoices for reasonable attorneys' fee and expenses incurred in prosecuting the

---

[5] May 27 2010, Transcript, Various Motion Hearing, at p. 267, lines 16-18.

[6] May 27 2010, Transcript, Various Motion Hearing, at p. 286, lines 11-14.

[7] May 27 2010, Transcript, Various Motion Hearing, at p. 287, lines 16-19 (emphasis added).

[8] May 27 2010, Transcript, Various Motion Hearing, at p. 295, lines 5-8 (emphasis added).

Motion for Sanctions.  At the time of filing this Motion, Plaintiffs have not indicated whether they will reimburse or contest the invoice amounts.

### SANCTIONS SHOULD INCREASE IF PLAINTIFFS APPEAL OR REFUSE TO PAY

7. Defendants fear that Plaintiffs are unwilling or unable to let things be, and will risk making a bad situation worse by pursing an appeal.

8. Additional sanctions are appropriate should Plaintiffs continue to violate the Confirmation Order—if they refuse to discontinue the proceeding, but rather expand it into a lengthy and costly appeal appellate process.  The Plaintiffs would appeal simply to continue to damage the Defendants and perhaps extort a settlement of the sanctions award.

9. In any case, the minimum sanctions necessary to deter violation of the Court's Confirmation Order should not be limited to those legal fees already incurred, but also an estimated sum of future legal fees that may be incurred as a result of Plaintiffs' continuing legal maneuvers.  The Court is asked to take judicial notice of the prolix and incendiary pleadings Plaintiffs have filed in this Adversary Proceeding and the likely complex nature of the appeals.  The Court is generally aware of the costs of legal representation in this Judicial District and the area of practice.  The Court is also aware that an appeal of this case will be more expensive than usual.  Accordingly, the sanction of legal fees should be increased in the event of an appeal.

10. Sanctions remain the appropriate means to ensure compliance with the Confirmation Order.  The court has the inherent power to enforce its own orders, and especially the Confirmation Order.  The Court has explicitly found that Plaintiffs' actions in filing a "disingenuous" complaint were explicitly bad faith.  There is little doubt that the clever re-titling of enjoined actions in an effort to tiptoe around the Court's Confirmation Order "defiles the temple of justice":

> In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy."

*Chambers v. NASCO*, 501 U.S. 32, 46 (1991) (internal citations omitted).

11. This Court has the inherent power to deal with abuses of the judicial system. A federal district court has both specific and inherent power to control its docket, and this includes the power to dismiss cases as a sanction for failure to obey court orders. *Taylor v. Combustion Eng'g, Inc.*, 782 F.2d 525, 527-27 (5th Cir.1986); *see also Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406-07 (5th Cir.1993) (noting that a federal district court's power to impose sanctions for bad-faith behavior during litigation is inherent and goes beyond powers granted by specific Federal Rules of Civil Procedure), *cert. denied sub nom.*, *Fox v. Natural Gas Pipeline Co.*, 114 S.Ct. 882 (1994).

12. Bad faith and repetitive abuse of the courts warrant severe sanctions. *See Frame v. S-H, Inc.*, 967 F.2d 194, 202 (5th Cir.1992); *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir.1986) (no abuse of discretion found in involuntary dismissal of case when litigant had "a history of disobedience to this court's orders").

13. This Court has the inherent authority to protect the integrity of the bankruptcy process by the imposition of appropriate sanctions. *In re Rainbow Magazine, Inc., 11* F.3d 278 (9th Cir. 1996). As was noted by the Ninth Circuit, "[t]here can be little doubt that the bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court." *Id.* at 284.

14.     Inherent power sanctions require a finding of "bad faith,"[9] but "bad faith" is simply the opposite of good faith—proceeding with an illegitimate motive or improper purpose. Bad faith is not limited to any single definition or set of circumstances.

15.     The Court has already determined that Plaintiffs acted in bad faith in filing their "deceitful" and "disingenuous" Complaint.  The Court awarded reasonable attorneys' fee and expenses and has indicated that it will dismiss the entire Complaint—with prejudice for many of the allegations.[10]

16.     Under the Court's inherent powers, the appropriate sanction for Plaintiffs' activities before this Court is not limited to the harm caused but should be determined with a view toward deterring future conduct.  *Pearson v. First NH Mortgage Corp.,* 200 F.3d 30, 42 (1st Cir. 1999).  The sanction should be the minimum needed to preserve the integrity of the system.

17.     Defendants fear that Plaintiffs possess the temerity to lodge an appeal of the Court's dismissal to continue their attempted end-run around the Confirmation Order and/or to avoid payment of the sanctions already imposed.  Thus, additional sanctions are appropriate should Plaintiffs continue to violate the Confirmation Order, act in bad faith, and/or with an improper motive.

18.     An appropriate additional sanction is $75,000 for an appeal to the District Court, $75,000 for an appeal to the Circuit Court, and $250,000 in the event of an appeal to the United States Supreme Court.  Also, the Court should issue coercive sanctions of $350 per diem for each

---

[9]   *See Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998).

[10]  May 27 2010, Transcript, Various Motion Hearing, at p. 293, lines 8-9.

day that the sanctions remain unpaid and the sanctions order remains un-stayed, with the Defendants maintaining the ability to seek additional coercive measures.

## CONCLUSION

19. Plaintiffs filed their Complaint in an effort to game the system and assert numerous barred and/or derivative claims owned by the post-confirmation Debtor. Accordingly, the Court has found the minimum sanctions are the legal fees and expenses incurred by Defendants in prosecution of their Motion for Sanctions. In the event the Plaintiffs continue to prosecute an appeal, the sanctions should likewise be increased.

WHEREFORE, the non-Wilson Vukelich Defendants pray for additional sanctions as follows:

    a.      $75,000 for an appeal to the District Court,

    b.      $75,000 for an appeal to the Circuit Court,

    c.      $250,000 in the event of an appeal to the United States Supreme Court,

    d.      Coercive sanctions of $350 per diem for each day that the sanctions remain unpaid,

    e.      that Defendants maintain the ability to seek additional coercive measures; and

  f. grant such other and further relief as is just and proper.

DATED: June 29, 2010.

               Respectfully submitted,

               MCKOOL SMITH P.C.

               By: */s/ Hugh M. Ray, III*
                  HUGH M. RAY, III
                  State Bar No. 24004246
                  ROBERT M. MANLEY
                  State Bar No. 00787955
                  600 Travis, Suite 7000
                  Houston, Texas 77002
                  Telephone: (713) 485-7300
                  Facsimile: (713) 485-7344

               **ATTORNEYS FOR THE NON-WILSON VUKELICH DEFENDANTS**

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the above and foregoing was forwarded on this 29th day of June 2010, via the ECF system to all parties on the ECF service list pursuant to DLR 5.1.

               */s/ Hugh M. Ray, III*
               HUGH M. RAY, III