# Exhibit "1"

THOUGHTS ON CENTURYTEL AS "DEBTOR IN POSSESSION"
OF SKYCOMM / SKYPORT

CenturyTel, Inc. (CTL) made their initial investment in SkyComm Technologies, Inc. (SCT) at the end of December 2002.  There were conditions associated with CTL's "loan/investment", as it constituted "Debtor in Possession" from the beginning due to the fact CTL created a hybrid transaction that consisted of "voting debentures."  How legal is it for the one making the loan to be able to control every aspect of the destiny of the company to whom the loan has been made?

While the Board of Directors was comprised of four members from CTL and four members from SCT, the Chairman, Clarence Marshall, was the designate of CTL.  At the time, Mr. Marshall was an employee of CTL and later was a paid consultant for CTL. The President/CEO, Bill B. McCrary, was to be replaced, as one of the conditions from CTL.  Mr. Marshall had the total authority to hire and fire the President/CEO replacement, who was Mr. Roger Klotz.  Mr. Klotz reported only to Mr. Marshall, as Mr. Marshall negotiated the contract of Mr. Klotz; therefore, Mr. Klotz actually worked for CTL, under this arrangement.  The BoD had no voice or position in this matter.

Decisions by the BoD must include the vote of the members of the board from CTL.  All assets were encumbered by CTL with UCCI's filed with the state, including land, buildings, contracts, shares of the Major Shareholders, etc.  Additional monies from CTL were always late, so that by the time the money appeared in the account, SCT had accumulated additional debts.  SCT never had the money required to advance the company, as did SCT's competitors.  This was evidenced, as SCT's competitors were able to "lease" equipment, while SCT was forced to make the client "capitalize" equipment, constituting a much more difficult sale.

Mr. Klotz proceeded to hire previously known persons to him, with experience in "wire" telephone sales, but who were new to "wireless" satellite communications.   Again, Mr. Marshall approved these new hires.  Not surprisingly, CTL is a "wired" telephone company for rural America in about 23 states without an appreciation or understanding of wireless satellite technology.  SCT's market was to be primarily to the energy sector; however, without competent persons in sales, SCT was forced to look more and more to ancillary endeavors, particularly Government.  This type of sale has a long cycle and it is dependent of many factors, not the least of which would be political budgeting; therefore, this resulted in a shortfall of the projected revenues.  After a couple of unsuccessful years by the sales department, an experienced satellite telecommunications salesperson was hired, and subsequently created more business in 6 months than all the other salespersons had generated in two years; nevertheless, with little control from the President/CEO and with no control allowed from the board, the expense level was exceeding the revenue generated.

When it was suggested SCT should have some input from an outside financial counsel, the following was adamantly indicated by Mr. Marshall and supported by the other CTL board members:  (1) We are your banker, with all the money you could need (2), CTL will provide funds and continue to dilute SCT (3) CTL does not want any partners, and (4) Remember who you work for --- CTL.

**In January of 2005 there was a major turning point, as there was a change in some of the members of CTL's board, including the addition of a person from Wall Street who was not a participant in the original decision to invest in SCT.  Some members of the CTL board strongly suggested to Mr. Marshall that he was "conflicted" as Chairman, as he was representing both SCT to CTL and CTL to SCT, so Mr. Marshall resigned; however, it was felt by CTL he should continue as Chairman and let Mr. Klotz interface with CTL.  This never worked as Mr. Marshall continued to dominate with CTL's decision making, and simply made sure Mr. Klotz followed the instructions of CTL.**

It is interesting to note SCT has never been referenced in any SEC Filings by CTL, not even a footnote; therefore, an "off balance sheet" transaction was in effect.   Subsequently, it was decided by CTL to get out of the "wireless" business – the cell phone division was sold to AllTell; furthermore, a

"prospectus" was put out in March of 2005 on SCT in an effort by CTL to sell their debentures, even at a "haircut". SCT was not advised of this action, and SCT only found out by coincidence in excess of 90 days after the "prospectus" was made available to the public. In July it was disclosed in a board meeting that CTL wanted out of this relationship, and no more funding would be made available to SCT. It became clear to SCT that CTL simply wanted to limit their liability with reference to SCT, and they were prepared to do so at any cost, as will become even more apparent in subsequent paragraphs. Possibly there were some SEC considerations in their decision process, due to the "off balance sheet" nature of CTL's transactions.

The company was forced into voluntary bankruptcy about mid-November of 2005. CTL was anxious to get rid of any liability associated with SCT; therefore, CTL jumped on the first one who promised to be able to take SCT through bankruptcy, even if this company could not prove financial resources to complete the transaction and even though this company was a foreign entity, who according to the FCC regulations such a company could not own more than 20% of STC.

Another major shift occurred in the face of bankruptcy, as Mr. Klotz decided he would do a "management buyout", which is essence seemed to be more about his personal future than anything else. Mr. Klotz assumed there was no way CTL was going to fire him, so he became the one making categorical decisions, without any input from the board. He was cautioned on several occasions by Margaret Symonds, Bracewell & Giuliani, this was inappropriate behavior; nevertheless, such actions continued through this present time.

There were other companies who were far more capable of moving the company forward; however, CTL did not want to discuss the matter with them, as CTL feared the one they had in mind (a Canadian Company – Balaton) might bolt, and others might not totally absolve CTL of prior SEC transgressions. CTL simply wanted someone to purchase their debentures at some price (about $3MM) without CTL taking any equity position in the deal or without CTL being involved in SCT's future. It seemed CTL just wanted to bury the past and "off-load" their responsibility.

Numerous times, CTL was warned that Balaton did not have the funds to complete the transaction, and CTL knew or should have known about the 1/5 rule of a communications company with government contracts; nevertheless, CTL continued to pursue Balaton's involvement, even to the extent of helping to get certain members of the FCC pulled out of the committee and into private conversations, to secure favorable FCC approval of change of control of SkyComm/SkyPort. Now, it is obvious Balaton does not have the money to complete the transaction with CTL, so CTL is agreeing to take an equity position in this new company Balaton is creating in order to try to bring closure to this situation. CTL has never converted any of their debentures; therefore, they do not own a single share of SkyComm. The present shareholders are being significantly diluted, so the largest present shareholder (now owning about 30%) will be diluted to about 2.7% in the new company, according to filings with the FCC.

A reorganization plan was promised to the Bankruptcy Court, but none was ever produced, instead a formula, based on the amount of the outstanding debt, was put in place and each of the creditors was contacted with this formula. However, one glaring indiscretion occurred with the creditors through a side deal whereby a particular creditor would not fall under the same rules of settlement as all the other creditors and would gain a significant advantage over the other creditors. It is believed SkyComm's legal counsel in the Bankruptcy Court was aware of this; nevertheless, it is apparent there was more concern with resolving the go-ahead for Balaton in behalf of CTL, than in representing SkyComm/SkyPort. After all, CTL was going to be sure Bracewell representatives were going to get paid. CTL's desire to bury SCT has been so passionate, logic was, and continues to be, defied.

The essence of all this is – with CTL fostering a foreign owned company to take control of SCT, government contracts will likely be cancelled, and SCT will be required to repay monies received for service. Much of this money has been spent, a real catastrophe for SCT's shareholders. All in an orchestrated effort to limit CTL's liability, in reference to CTL's voting debenture transaction with SCT.

*WRITTEN BY: BILL B. MCCRARY, FORMER PRESIDENT/CEO OF SKYCOMM – ABOUT 10-14-07*