# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

IN RE: §
§
SKYPORT GLOBAL §          CASE NO. 08-36737-H4-11
COMMUNICATIONS, INC., §          (Chapter 11)
  Debtor §
§

---

JOANNE SCHERMERHORN, JOHN K. WAYMIRE, CHET §
GUTOWSKY, JOHN LLEWELLYN, JOSEPH A. LOPEZ, §
ROBERT FOOTE, BLF PARTNERS, LTD., ECAL PARTNERS, §
LTD., WHIZKID  VENTURE, LLC, BELLA KRIEGER, MARTIN §
POLLAK, GLOSTER HOLDINGS, LLC, MELVYN REISER, §
BARRY KLEIN, CHESKEL KAHAN, JOHN A. REES, BRIAN W. §
HARLE, MICHAEL STEIN, LAWRENCE SOLOMON, TRACY §
ELSTEIN & DAVID TOGUT, JASON CHARLES TOGUT §
TRUST, BMT GRANTOR TRUST, LYNN JOYCE ELSTEIN §
TRUST, CHARLES STACK, JOSEPH BAKER, MOVADA, LTD., §
PUDDY, LTD., DRACO CAPITAL, INC., EDWARD PASCAL, §
ROBERT MENDEL, STANLEY BERAZNIK, DON DUI, BEN §
ARIANO, 3791068 CANADA, INC., PETER TAYLOR, JOHN E. §
PANNETON, WAYNE C. FOX, DAVID CURRIE, BYRON §
MESSIER, DARSHAN KHURANA, MATEO NOVELLI, DIYA §
AL-SARRAJ, SEQUOIA AGGREESSIVE GROWTH FUND, §
LTD., SEQUOIA DIVERSIFIED GROWTH FUND, LTD., RIG III §
FUND, LTD., ARAN ASSET MANAGEMENT SA, SEMPER §
GESTION SA, and EOSPHOROS ASSET MANAGEMENT, INC. §
  Plaintiffs §
§
vs. §          ADVERSARY NO. 10-3150
§
CENTURYTEL, INC. (a/k/a CENTURYLINK), CLARENCE §
MARSHALL, R. STEWART EWING, JR., MICHAEL E. §          JURY TRIAL DEMANDED
MASLOWSKI, HARVEY P. PERRY, ROBERT KUBBERNUS, §
BALATON GROUP, INC., BANKTON FINANCIAL §
CORPORATION, BANKTON FINANCIAL CORPORATION, LLC, §
CLEARSKY MANAGEMENT, INC., WILSON VUKELICH, LLP §
and CLEARSKY INVESTMENTS, LP §
  Defendants §

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SANCTIONS SOUGHT BY
## SKYPORT GLOBAL COMMUNICATIONS, INC.
### (refers to Dkt #104)

TO THE HONORABLE UNITED STATES BANKRTUPCY JUDGE:

The above-captioned Plaintiffs hereby object to the Motion for Additional Sanctions of SkyPort Global Communications, Inc. (SkyPort"), and submit the following in response to the request by Robert Kubbernus, Balaton Group, Inc. and SkyPort (the "Kubbernus Parties") request for sanctions equal to their counsel fees and expenses:

## BACKGROUND FACTS

1.     On March 26, 2010, defendants CenturyTel, Inc., Clarence Marshall, R. Stewart Ewing, Jr., Michael E. Maslowski, Harvey P. Perry ("CenturyTel Defendants") and Robert Kubbernus, Balaton, Group, Inc., Bankton Financial Corporation, Bankton Financial Corporation, LLC, ClearSky Management, Inc., ("Kubbernus Defendants") (collectively, "Removing Defendants") removed Plaintiffs' State Court Petition to this Court and moved to dismiss it and for sanctions.

2.     On May 18, 2010, the Kubbernus Parties commenced an adversary proceeding against the Schermerhorn Parties seeking a declaratory judgment that all of the Schermerhorn Parties' claims were derivative, an injunction enjoining Defendants' from "attempting to contact customers, vendors, government agencies and employees of [the Kubbernus Parties]" and sanctions.

3.     This proceeding was scheduled for an expedited hearing on May 27, 2010, along with Removing Defendants' papers seeking removal, dismissal and sanctions.

4.     On May 27, 2010, this Court heard evidence on the Kubbernus Parties' adversary proceeding.  The Court indicated that it would award the Kubbernus Parties their reasonable counsel fees and expenses and entertain a motion for additional sanctions.

5.      On June 10, 2010, this Court issued an order granting the Kubbernus Parties a temporary injunction enjoining the Schermerhorn Parties from "pursuing any and all claims or causes of action, direct or derivative, against all of the Defendants" and restricting their right to contact "former and current vendors, employees, and customers of the Debtor" without approval either by the Debtor's counsel or the Court.

6.      On June 10, 2010, counsel for the Kubbernus Parties submitted invoices to Plaintiffs indicating that he had expended $17,800.29 in legal fees and costs on this adversary proceeding.

7.      On June 30, 2010, SkyPort filed an application for additional sanctions in the following amounts: (a) compensation for time and effort spent by SkyPort personnel of $103,213 and (b) punitive damages of $233,300.

## POINT I

### THE SANCTIONS AWARD MUST RELATE
### TO THE EXPENSES CAUSED BY THE VIOLATION

1.      In awarding counsel fees as sanctions, the Court must determine:

> *What expenses or costs were caused by the violation of the rule?* The district court must demonstrate some connection between the amount of monetary sanctions it imposes and the sanctionable conduct by the violating party. *See Thomas,* 836 F.2d at 879; *Willy v. Coastal Corp.,* 855 F.2d 1160, 1173 (5th Cir.1988), *appeal after remand,* 915 F.2d 965 (1990); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974).

*Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993).

2.      There are many cases which illustrate this principle.  In the context of a willful violation of the automatic stay, the court should look to see what fees or costs are resulted from the violation, and only award those fees.  *In re Bertuccio*, 414 B.R. 604 (Bankr N.D. Cal. 2008), *subsequent determination*, 2009 WL 3380605 (Bankr. N.D. Cal. 2009).  *In re Dawson*, 390 F.3d

1139 (9th Cir. 2004) (when debtor in stay litigation prevailed on only one of 20 issues that they raised, and failed to present any documentary evidence corroborating their estimate of how much time its attorney spent in litigating this one successful issue, bankruptcy court did not abuse its discretion in dividing by 20 the total time spent by debtor's attorney on stay litigation and using this quotient as number of hours reasonably expended for purpose of calculating Lodestar fees).

8.     The Kubbernus Parties sought two specific forms of relief in their adversary proceeding. The first was a declaratory judgment that all of the Schermerhorn Parties' claims were derivative.  On this, they were only partially successful, the Court found that some were direct and some were derivative.  In any event, the bringing of derivative claims is not a violation of the confirmation order and is not sanctionable. *See In re Solomat*, 231 B.R. 149, 156 (2nd Cir. BAP (Conn.) 1999); *See also Malesovas v. Sanders*, 2005 WL 1155073, *3 fn.5 (S.D. Tex. May 16, 2005).  The Kubbernus Parties should not receive sanctions for obtaining this determination.

9.     The second form of relief was an injunction against the Schermerhorn parties contacting "customers, vendors, government agencies and employees of [the Kubbernus Parties]."   On this too, they were partially successful.   The Court granted a preliminary injunction, but did not prohibit the Schermerhorn Parties from contacting (a) government agencies, or (b) customers, vendors, and employees of Balaton or Kubbernus.  However, the Court did not find that Plaintiffs had committed any sanctionable conduct in this regard. Moreover, there was no showing that Plaintiffs had done anything other than interview witnesses and investigate facts in preparation for filing suit.  Given that it has been universally conceded Plaintiffs were absolutely entitled to assert the ClearSky fraud claims, the conduct of informal discovery by Plaintiffs' counsel cannot possibly serve as a basis for sanctions.   Thus, the Kubbernus Parties should not receive sanctions for obtaining this determination.

4

## POINT II

### THE DOCTRINE OF UNCLEAN HANDS SHOULD BAR
### SANCTIONS TO THE KUBBENUS PARTIES

10.     Significantly, the injunction obtained by SkyPort was obtained on the testimony of Kubbernus, its CEO, that Dawn Cole and Roger Klotz were prospective customers of SkyPort and that the injunction was necessary to protect SkyPort's relationships with its customers from interference by the Schermerhorn Parties.[1]   There is now compelling evidence that Mr. Kubbernus' testimony supporting this injunction was not true.

(a)     On July 12, 2010, Dawn Cole filed a letter with this court accusing Kubbernus of perjury and witness tampering.[2]   According to Ms. Cole, after Kubbernus obtained the injunction prohibiting Plaintiffs from speaking with her, he offered to pay her not to testify against him. When she refused, he filed a complaint against her which he never served, but sent copies of to Cole's customers, implying that if they talked to her they would be subject to suit for complicity in her violation of her non-disclosure agreement.[3]   As a result, Ms. Cole's customers ceased talking to her.

(b)     As soon as Kubbernus received the Court's June 10, 2010 order granting him an injunction against the Schermerhorn Parties contacting Klotz, he sent a letter to Klotz seeking to create a record that supported his testimony that Klotz somehow had an ongoing business relationship with SkyPort.   Klotz immediately called the Schermerhorn Parties' counsel and sent him an email, dated June 10, 2010, confirming that he was not a customer of SkyPort and had no business relationship with SkyPort (copies of these emails are annexed hereto as Exhibit A). Other relevant evidence of the Kubbernus' unclean hands is set forth in Plaintiffs' Objection to Removing

---

[1]     May 27, 2010 Transcript p.107, line 21 to p.108, line 3.
[2]     Docket # 122.
[3]     *Id*.

5

Defendants' Request for Additional Sanctions and Memorandum on the Unreasonableness of their Fee Request, and will not be repeated herein.

11.    Under the equitable doctrine of unclean hands, sanctions should not be awarded to the Kubbernus parties.  This would apply to both reimbursement of legal fees and the requests for additional and punitive damages.

12.    It is undisputed that a bankruptcy court is a court of equity and must be guided by equitable principles in awarding sanctions.  *Norwest Bank Worthington* v. *Ahlers,* 485 U. S. 197, 206 (1988); *accord*, *SEC* v. *United States Realty & Improvement Co.,* 310 U. S. 434, 455 (1940). *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007).

13. The doctrine of "unclean hands" is applicable to parties seeking sanctions:

> The equitable maxim of "he who comes into equity must come with clean hands" is a "self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [other party]." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The maxim "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Id.* at 815. However, while the misconduct at issue need not be criminal or tortious, almost any willful conduct "concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the [court]." *Id.* "What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the [other party]." *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir.1963).

*South Shore Ranches, LLC v. Lakelands Co., LLC,* 2010 WL 2546112, *4, fn.2 (E.D. Cal. 2005).

## POINT III

## SKYPORT'S REQUEST FOR
## ADDITIONAL SANCTIONS SHOULD BE DENIED

14.     Removing Defendants submit that they are entitled to actual damages for time spent by SkyPort personnel, which they claim amount to $103,313.  In support, they submit a list of total hours spent by SkyPort employees "incurred in responding to Schermerhorn Suit (Case 10-3150)" multiplied by the hourly rates of those employees for consulting services that SkyPort offers. These hours also included 12.5 hours spent by Wilkinson, Barker, Knauer LLC (sic), SkyPort's FCC counsel in the tally.

15.     However, the list of hours includes no detailed time sheets or even any descriptions of the work that was performed.  The request does not include an invoice of Wilkinson Barker Knauer, or even an explanation as to how these fees are related to the sanctioned conduct.  There is no way to determine or verify whether the work done related to obtain relief with respect to the sanctioned conduct.  Looking at the information that is provided, it would appear they are not related, since the time records relate to the Schermerhorn Suit (Case 10-03150) and not to the Adversary Proceeding commenced by the Kubbernus Defendants for which they are seeking compensation (Case No. 10-03225).  This would apply to both SkyPort personnel and FCC counsel.

16.      There is no way for the Court or Plaintiffs to verify whether the time spent is related to the violation, or whether the work done was necessary to correct the violation, as required by *Thomas v. Capital Sec. Capital Services, Inc.,* 836 F.2d 866, 877 (5th Cir. 1988) and *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993).

17.     There is no way to verify that the billing rates used are real, let alone reasonable for comparable personnel in the Houston market.  It is highly unlikely that Kubbernus, who has no technical telecommunications background could charge $375 per hour for his consulting services with respect to services rendered by a telecommunications company and that someone

7

would pay that rate for his technical advice.  The same would apply to Douglas Whitworth, who is the CFO and not a technical person.

18.    The case law cited by the Kubbernus Parties merits only a brief response.  *In re McClure*, 429 B.R. 655 (2009) is a case in which the court award $2,500 to an individual debtor, to incentivize individuals to prosecute violations of the discharge injunction against large credit companies, such as Bank of America, as in Mr. McClure's case.  *Id*. at 664.  Needless to say, these facts are inapplicable to our case.

19.    Further, it is impossible to determine based on the spreadsheet submitted as Exhibit B to the request for additional sanctions, if these hours were spent in addition to these employees' normal business hours.  In such a case, the damages would be to the employees, not SkyPort.

20.    SkyPort did not allege that because of these time expenditures, any of these employees were not able to perform work that customers were paying for.  SkyPort has thus shown no out of pocket expenses and no lost profits.  SkyPort's only argument to support its damages is its assertion that these employees could have used their time to do something else.[4] These damages are at best speculative.

21.    Asking this court to award lost profits based on lost contracts is also speculative. The assertion that employees could have been working on business development does not get SkyPort any closer to proving the lost profits because they are still speculative.  *See Eastman v. Baker Recovery Services*, 419 B.R. 711 (Bankr. W.D. Tex 2009).   The correct measure for damages for an individual debtor, as held in all the cases cited by SkyPort is the hours that the

---

[4]    Motion for Additional Sanction ¶ 15 (The hours "could have been spent rendering services to other clients and/or generating new business for Skyport.").

individual debtor was missing from work due to the case, thus not being able to collect wages. *In re Adcock*, 2004 WL 3244580, *2 (Bankr. M.D. La. Oct. 26, 2004).

22.     Furthermore, the time spent by an employee of a company testifying is not recoverable damages.   *In re Adcock*, 2004 WL 3244580, *2 (Bankr. M.D. La. Oct. 26, 2004).

23.     In addition, these hours would have been incurred by employees of SkyPort in any event, because the ClearSky claims would have (and will) require Kubbernus to spend time dealing with them.   The other individual claims brought by Plaintiffs have the same effect as well.

**POINT IV**

**SKYPORT'S REQUEST FOR PUNITIVE
SANCTIONS SHOULD BE DENIED**

24.     SkyPort submits that this Court should award it punitive damages because it is considering changing its name and re-branding itself due to the "stench" that was created by the allegations in the Petition.

25.     However, this effort to justify punitive sanctions rests on a number of dubious presumptions.  First, there has been no determination that the claims in the Petition are not true, and there has been a determination that the direct claims and the ClearSky claims will be permitted to proceed.  Furthermore, there is mounting evidence that the "stench" has been created by Kubbernus' and CenturyTel's own doing.

26.     Second, in order to recover punitive damages, SkyPort must show that Plaintiffs sanctionable conduct was with "malevolent intent."[5]  *In re Mooney*, 340 B.R. 351, 359 (Bankr.

---

[5]     It is not enough to show that actions were deliberate in order to recover punitive damages.  *In re Owen*, 169 B.R. 261 (Bankr. D. Me. 1994) (allegations in the Chapter 7 debtor's complaint, that a creditor and its attorneys had willfully violated the discharge injunction by serving the debtor with a copy of its complaint without first deleting language seeking to hold the debtor personally liable on his discharged prepetition obligation, did not

E.D. Tex. 2006) (*citing Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834, 848-49 (Bankr. W.D. La 1995) (repossessing vehicles of debtor under no colorable right of law warrants punitive damages)).  Per the example of *In re Mooney*, malevolent intent requires that SkyPort show malicious nature of plaintiffs' behavior, or vexing conduct evidenced by **ongoing** collection efforts.  *See also In re Evans*, 289 B.R. 813 (Bankr. E.D. Va. 2002) (court focusing on broad scope of collection activities); *In re James*, 285 B.R. 114 (Bankr. W.D. N.Y. 2002) (holding that punitive damages not warranted against a creditor who willfully violated the discharge injunction, where the debtor presented no evidence of any **persistent pattern** of misconduct).  There is no evidence that Plaintiffs acted with malevolent intent.

27.     Furthermore, punitive damages are appropriate in order to deter the violating parties from continuing their unlawful conduct.  *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 190 (Bankr. E.D. Va. 2000) (finding that punitive damages unnecessary where violator is not an institutional creditor likely to have the opportunity to repeat such acts in furtherance of collecting discharged debt).  Plaintiffs are not institutional lenders and it is extremely unlikely they will find themselves ever again in the circumstances which led to their sanction.

28.     Finally, SkyPort seeks speculative prospective damages for something it may or may not do – changing its name and rebranding itself – by calling these "punitive damages." Aside from being speculative, these costs do not address the issue of damages or potential damages, only a possible avenue for remedying them.  *See Eastman v. Baker*, 419 B.R. 711.

## CONCLUSION

---

sufficiently allege that the defendants acted with malevolent intent, in an egregious intentional manner or in bad faith as required to support a punitive damages award); *see also In re McTyeire*, 357 B.R. 898 (Bankr. M.D. Ga. 2006) (holding that punitive damages not appropriate were good law relied on thinking that the debt was not discharged).

29.     For the reasons state herein, the Motions for Sanctions and Additional Sanctions should be denied in its entirety.

Dated: July 23, 2010

Respectfully submitted,

MCFALL, BREITBEIL & SHULTS, P.C.


By: _/s/ W. Steve Smith_____
    W. STEVE SMITH
    State Bar No. 18700000
    1331 Lamar Street, Suite 1250
    Houston, Texas 77010
    Tel.       713-590-9300
    Fax.      713-590-9399
    Email:  ssmith@mcfall-law.com


THE FRYAR LAW FIRM

By: _/s/ F. Eric Fryar_____
    F. ERIC FRYAR
    State Bar No. 07495770
    1001 Texas Ave., Suite 1400
    Houston, Texas 77002
    Tel.      (888) 481-9995
              (281) 715-6396
    Main Fax:  (281) 715-6397
    Direct Fax: (281) 605-1888
    Email: efryar@fryarlawfirm.com


SAMUEL GOLDMAN & ASSOC.

11

By: /s/ Samuel Goldman
   SAMUEL GOLDMAN
   100 Park Ave., 20th Fl.
   New York, NY 10017
   (212) 725-1400
   (212) 725-0805 (fax)
   Tel.   (212) 725-1400
   Fax.   (212) 725-0805
   Email: sg@sgalaw.com


   HAROLD B. OBSTFELD, P.C.

By: /s/ Harold B. Obstfeld
   HAROLD B. OBSTFELD
   100 Park Ave., 20th Floor
   New York, NY 10017
   (212) 696-1212
   (212) 867-7360 (fax)
   Tel.   (212) 696-1212
   Fax.   (212) 867-7360
   Email: hobsd@erols.com

   ATTORNEYS FOR PLAINTIFFS


### CERTIFICATE OF SERVICE

   I certify that a true and correct copy of the foregoing document is being served on the 23rd day of July, 2010, on all of the following parties via regular first class mail, postage prepaid. Those ECF users registered in this case will receive electronic notice on July 23, 2010.

| | | |
|---|---|---|
| Office of U.S. Trustee | Hugh M. Ray, III | Robert M. Manley |
| 515 Rusk Ave., Ste. 3516 | McKool Smith, P.C. | McKool Smith, P.C. |
| Houston, TX 77002 | 600 Travis, Suite 7000 | 300 Crescent Court, Suite 1500 |
| | Houston, TX 77002 | Dallas, TX 75201 |

Edward L. Rothberg
Hoover Slovacek, L.P.
5847 San Felipe, Ste. 2200
Houston, TX 77057

David R. Jones
Elizabeth Freeman
Porter & Hedges, LLP
1000 Main Street, 36th Fl.
Houston, TX 77002

Wilson Vukelich, LLP
Valleywood Corporate Centre
60 Columbia Way, Suite 710
Markham, Ontario L3R 0C9
CANADA

*/s/ W. Steve Smith*
W. Steve Smith